IN THE

# SUPREME COURT of JUDICATURE

OF THE

# STATE OF NEW JERSEY,

## AT FEBRUARY TERM, 1859.

---

## THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN vs. GEORGE J. GEAR.

1. The power to amend pleadings, under the statute, (*Nix. Dig.* 641, ?
166,) extends to the introduction of matters which the parties hoped and
intended to try in the cause, and is not limited to matters within the issue
upon the record.

2. Where a motion to amend is improperly allowed or denied at the
circuit, can the decision of the judge be reviewed by writ of error? *Query.*

3. A statute providing that an ordinance passed by a municipal corpora-
tion shall be published for the space of twenty days in at least one news-
paper before it shall go into effect, is satisfied by one insertion, and need
not be published in successive numbers of the paper; the ordinance goes
into effect in twenty days after its publication in the first number.

4. The charter of a municipal corporation provides that the council, for
cause, may remove any person appointed by them under the provisions of
this act; *held*, that the council were not thereby erected into a tribunal to
hear and determine, requiring notice to be served on the party removed
before they got jurisdiction of the person, and that the words, for cause,
only meant such cause as was satisfactory to the council.

5. An appointment to a public office for a term of years, and the accept-
ance of such office, is not a contract between the government and the per-

265

son appointed that the officer will serve, or that the government will pay during the term for which the officer was appointed; either party may determine the official relation.

In error to the Hudson circuit.

George J. Gear brought an action of *assumpsit* against the mayor and council of the city of Hoboken to recover his salary as a policeman of said city. The declaration was as follows:

" The mayor and council of the city of Hoboken, the defendants in this suit, were summoned to answer unto George J. Gear, the plaintiff therein, of a plea of trespass on the case upon promises; and thereupon the said plaintiff, by Samuel W. Carey, his attorney, complains for that whereas the said defendants heretofore, to wit, on the twenty-third day of June, in the year of our Lord one thousand eight hundred and fifty-seven, in said county, were indebted to the plaintiff in the sum of one thousand dollars, (for the pay or salary of the said plaintiff before that time, and then due and payable from the said defendants to the said plaintiff: for that the plaintiff, for two years next preceding said day, had been and was a policeman of said defendants for the city of Hoboken, appointed and employed by said defendants at a salary of four hundred and fifty dollars per annum, which the defendants had promised and agreed to pay to the plaintiff so long as he was such policeman, and) for the services of the said plaintiff, as policeman of the city of Hoboken, for the said defendants, and at their special instance and request; and being so indebted, the said defendants, in consideration thereof, afterwards, to wit, on the day and year last aforesaid, undertook and then and there faithfully promised the said plaintiff to pay him the said last-mentioned sum of money, when they, the said defendants, should be thereunto afterwards requested; yet the said defendants disregarded their promises, and have not paid any of the said moneys, or any part thereof, to the plain-

tiff's damage one thousand dollars, and therefore he brings suit," &c.

That part of the declaration in parentheses was added as an amendment on the trial; the declaration, as originally filed, contained only a single count for services done and performed.

On the trial at the circuit, after the plaintiff had closed his evidence, the defendants objected to his recovery under the declaration, which contained only a count for services rendered. The plaintiff then asked leave to amend by inserting the above-stated count for salary. The amendment was allowed by the court, and the defendants excepted. Several other exceptions were taken during the progress of the trial, and bills of exception were allowed and sealed.

The jury rendered a verdict for the plaintiff for $374; judgment was entered thereon, and the cause was removed to this court by writ of error.

The points relied on for a reversal of the judgment sufficiently appear in the opinions delivered in this court.

Argued at November Term, 1858, before the CHIEF JUSTICE, and Justices OGDEN, VREDENBURGH and WHELPLEY.

*Lyons* and *I. W. Scudder*, for plaintiffs in error.

*Zabriskie*, for defendant.

The CHIEF JUSTICE. On the 18th of June, 1855, the city council of Hoboken, in pursuance of powers conferred by the charter of the city, passed an ordinance to establish a day and night police. The ordinance provides for the appointment of a chief of police and of five assistant policemen, one from each ward of the city, who are to hold their respective offices for the term of two years, and to receive, by way of compensation for their services, a stated salary. On the 20th of June, 1855, George J.

Gear, the plaintiff in the court below, was appointed a policeman of said city by a resolution of council. He accepted the appointment, and entered upon the duties of the office. On the 9th of January, 1856, a resolution disbanding the police force was passed by council, in the following words: " *Resolved*, That the city clerk be instructed to notify the chief of police and five assistant policemen that their services hereafter will not be required, in consequence of the means voted for that purpose being exhausted." A copy of this resolution was set up in the police station-house. The chief of police called their attention to it, and informed the police, including the plaintiff, that they were disbanded under the resolution, and that he should have no more charge of them. He also directed them to deliver up their badges of office, and they were surrendered without objection. It was not proved or alleged that the plaintiff had rendered services as policeman, or that he had been in any way recognized as an officer of the city after the 20th of January, 1856, when the resolution disbanding the police was communicated to him. He was paid in full for his services so long as he continued to act. The plaintiff's claim was for two years' salary as policeman, from the 23d of June, 1855, to the 23d of June, 1857, at $450 per annum, the rate fixed by ordinance, deducting therefrom the amount which he had been paid up to the time he had ceased to act. He claims that he was lawfully appointed a policeman for the term of two years; that the resolution of the council disbanding the police force was null and void, and that consequently he is entitled to his salary during the whole term of office for which he was appointed, though he performed no duty.

The plaintiff having rested his evidence, the defendant objected that there could be no recovery, the declaration containing only the common *indebitatis assumpsit* count for services performed by the plaintiff as policeman, and there being no evidence of any service rendered which

had not been compensated. The court thereupon permitted the plaintiff, against the will of the defendants, to amend the declaration, by inserting therein a claim for salary as policeman upon the contract of the defendants to pay for two years, at $450 per annum.

One of the errors assigned is, that the court permitted the plaintiff to amend his declaration *by introducing a new cause of action.* The authority for the amendment is claimed under the 46th section of the act of 1855. *Nix. Dig.* 641, § 166. The power is conferred, to use the language of the statute, "in order to prevent the failure of justice by reason of mistakes and objections of form." The power of amendment is very broad. The court is authorized "to amend all defects and errors in any proceedings in civil causes." And the act not only authorizes such amendments, but expressly requires that "all such amendments as may be necessary for the purpose of determining, in the existing suit, the real question in controversy between the parties *shall be so made.*" What, then, are to be deemed "mistakes or objections of form" within the meaning of the act, and how is "the real question in controversy between the parties" to be ascertained or determined? The defendant's counsel objects that the amendment was not a matter of form, but of substance, and that it introduced a new substantive cause of action; that under the common count, as the declaration was originally framed, the plaintiff claimed compensation for service actually rendered; that under the amended declaration, he claimed to recover not for services rendered, but by virtue of a special contract, by which the defendants stipulated to pay a fixed salary for a specified time. And so under the pleadings, as they originally stood, the real question at issue, and therefore, by technical rules of law, the real question in controversy between the parties, was whether services had in fact been rendered by the plaintiff to the defendant. And clearly the amendment was not necessary for the purpose of de-

termining that issue. If, then, these questions are to be answered, as they would be upon a demurrer upon the face of the pleadings themselves, the defendant's objection is well taken. According to the technical rules of pleading, the amendment was not a matter of form, nor was it necessary for the purpose of determining the real question at issue between the parties. But if these questions are to be answered independent of the technical rules of pleading and the formal issue upon the record, and in view of the allegations and proofs upon the trial, it is equally clear that the amendment was merely formal, and was necessary for the purpose of determining the real question in controversy between the parties. By the bill of particulars, annexed to the declaration, it appears that the plaintiff's real claim was for salary as policeman for two years from the 21st of June, 1855, to the 23d of June, 1857, at $37.50 per month, deducting $260.97, paid on account. And by reference to the evidence at the trial, it clearly appears that the real question in controversy between the parties was not whether the plaintiff's claim rested upon an express or implied *assumpsit*, not whether he had or had not rendered, as a policeman, the service, for upon these points there was really no controversy whatever. But the real question in controversy was, whether the defendants were legally bound to pay the plaintiff's claim by reason of his election as policeman by the council under the ordinances of the city, and their failure to remove him according to law. But the plaintiff, as the declaration was originally framed, though his case had been fully proved so as to entitle him to a verdict upon the *merits*, could not recover upon technical grounds. The evidence did not support the declaration. There was an objection of form, a mistake in not adapting the declaration to the real claim. The case proved was not within the technical issue upon the record. In this aspect the amendment was clearly in order to prevent the failure of justice by reason of an objection of form, and for the

purpose of determining in the existing suit the real question in controversy between the parties.

Whether, therefore, the amendment is to be deemed matter of form or of substance, depends upon the question whether the statute is to be interpreted in regard to the technical rules of pleading, and whether the real matter in controversy is to be ascertained by reference to the formal issue on the record, or to the actual claim of the party and the evidence offered on the trial.

A somewhat analogous inquiry has been, to some extent, a vexed question in Westminster Hall under the statute of 3 and 4 *Will.* 4, *ch.* 43, § 23 ; *Chitty's Pl.* (*7th ed.*) *Appendix, p.* 719. That statute, in order to avoid objections on the ground of variance, authorizes the proceedings in civil actions to be amended in any particular not *material to the merits* of the case, and by which the opposite party cannot *have been prejudiced in the conduct of his action or defence.* Now if the statute is to be interpreted solely in reference to the issue made by the pleadings, everything is material to the merits by which the result of the trial would be affected ; and so every amendment which would prevent a nonsuit on the most technical grounds would be prejudicial to the conduct of the defence.

In order to avoid these technical difficulties, the 43d section of the statute now under consideration (*Nix. Dig.* 641, § 163,) declares that no variance between the allegations in a pleading and the proof shall be deemed material, unless it have actually misled the adverse party to his prejudice in maintaining his action or defence upon the merits. This section makes the materiality of the variance depend solely upon its effect upon the substantial merits of the case irrespective of all technicalities. I cannot doubt that the same object was in contemplation in framing the 46th section of the act now under consideration. Its object was to avoid the delays, embarrassments, and defeat of justice, too often caused by the technical

rules of pleading, and to secure to the parties a trial upon the merits. It was to compel a trial of the case, not upon the pleadings, but upon the evidence, and to secure a decision according to the truth and merits of the case unfettered by formal rules or legal technicalities. Such has been the tendency and design of all modern legislation upon this subject; and to give to the statute the narrow construction insisted on by the defence would contravene its obvious policy and defeat its most benignant design. The statute should receive the most liberal construction, in order to promote the ends of justice. I am of opinion that the amendment permitted to be made in the plaintiff's declaration upon the trial of the cause was authorized by the statute, and constitutes no ground of error.

This subject has been recently under consideration by the Court of Common Bench in England, in the case of *Wilkin* v. *Reed*, 15 *C. B.* 192. The question arose upon the construction of the 222d section of the common law procedure act, (15 and 16 *Vic., ch.* 76,) of which the 46th section of our act is, in its material provisions, a literal copy. The action was by one attorney against another, for giving the false character of a clerk. The declaration charged that the defendant fraudulently represented to the plaintiff that the reason why he had dismissed the clerk from his employ was the decrease of his business; that he recommended the plaintiff to employ the clerk, and concealed from the plaintiff the fact that the clerk had been dismissed for dishonesty. On the trial, it appeared that the clerk had not been dismissed from the defendant's employ on account of dishonesty, but really for the reason assigned by the defendant to the plaintiff. But it further appeared that the clerk, while in the defendant's employ, had been guilty of dishonesty, and that the defendant had not communicated that fact to the plaintiff. On the trial the plaintiff moved to amend the declaration by substituting, in lieu of the charge that the defendant had fraudulently concealed the fact that the

clerk had been dismissed from the defendant's employ on account of dishonesty, the charge that he fraudulently concealed the fact that the clerk, while in the defendant's employ, had been guilty of dishonesty. The motion was denied, and the plaintiff was non-suited. The defendant thereupon moved to set aside the non-suit and for a new trial, assigning, as a ground, that the judge had improperly refused to permit the amendment to be made. The court unanimously held that the refusal to permit the amendment was right. Mr. Justice Maule, before whom the cause was tried, said he thought that the amendment asked for was one which ought not to be allowed. It appeared to him, upon the trial, to be plain, from *the pleadings and the evidence, as well as from the opening of the plaintiff's counsel*, what the question in controversy between the parties was. And again he says, " I think it was intended by the common law procedure act to limit the power of amendment to the introduction of matters which *the parties hoped and intended to try in the cause*, and not to authorize amendments which might raise questions which were never contemplated before." What the real question in controversy between the parties was is here ascertained, not from the pleadings alone, but also from the evidence and from the opening of the plaintiff's counsel, and the power of amendment is held to extend to the introduction of matters which the parties *hoped and intended to try in the cause*, and not to be limited to matters within the issue upon the record. This I conceive to be the sound interpretation of the statute.

If it appeared that the amendment had been improperly allowed, there would have been a serious question upon another point, not mooted on the argument, viz., whether the decision of the judge in allowing the amendment is a proper subject of a writ of error. Whether or not the proposed amendment is necessary for the purpose of determining the real question in controversy is, to some extent at least, a question of fact. What the real question

in controversy is, is a sheer question of fact, to be ascertained, as we have seen, by the judge at the trial, from the pleadings, the evidence, and even from the statement of counsel. The pleadings may give no real information on the subject. The motion to amend may be made and denied before the evidence is offered, and then the whole ground of the decision would be mere matter *in pais*, not apparent on the record. In the case of Wilkin *v.* Reed, already cited, the decision was made by a judge at *nisi prius*, and the propriety of the decision was brought in review upon a motion at bar for a new trial. Strong doubts were expressed by the court of their power to review the decision, even in that form. The statute 3 and 4 *Will.* 4, *ch.* 42 § 23, authorizing amendments to avoid a variance in case the amendment is allowed, expressly authorizes an application for a new trial on that ground. But if the amendment is denied, it has been held that the decision is not subject to review by the court at bar. 15 *C. B.* 197; *Doe* v. *Errington*, 1 *Ad. & E.* 750. It is not necessary here to decide the point, and these suggestions are made simply to avoid any inference that the decision complained of is regarded as the proper subject of a writ of error, and to prevent the case being used as a precedent for that purpose.

The second error relied upon is, that an ordinance of the city council was improperly admitted in evidence, inasmuch as the ordinance was not published for twenty days, as required by the charter. The charter requires that every ordinance shall be published for the space of twenty days in at least one newspaper published or circulated in said city or county before said ordinance shall go into effect. The publication is essential to the validity of the ordinance. The ordinance was inserted in a weekly newspaper, published in the city, for three weeks successively, once in each week. Twenty days from the time of the first publication had expired before the next number of the paper was issued. The charter does not re-

quire that the ordinance shall be published each day, nor
does it specify the number of times that it shall be
published, or the number of days that shall elapse be-
tween the first and last publication. The fair import of the
requirement is, that the ordinance shall be published in each
number of the paper issued within twenty days from the
date of the first publication. If a statute require that notice
of a sale be published for the space of twenty days, and
notice of such sale to be made on the 21st of June is inserted
in a paper published weekly on the 1st, 8th, and 15th of
the month, can it be doubted that the requirement of the
statute is complied with? If the first publication is oper-
ative for one week, and is virtually a publication for
seven days, the three publications must be deemed a pub-
lication for twenty-one days, though in fact only fifteen
days elapse between the date of the first and last publication.
The publication was a compliance with the requirements of
the charter, and the ordinance was properly admitted in evi-
dence.

The third error assigned is, that the court refused to
non-suit the plaintiff, on the ground that he had not
maintained and proved the issue on his part. This
raises the material question in the cause, whether upon
the declaration, as amended, the plaintiff can recover
upon the evidence offered at the trial. The evidence
shows that so long as the plaintiff continued to act as
policeman he was paid his salary. The question is,
whether after he had been discharged, whether lawfully
or unlawfully, he had ceased to act as policeman, he is
entitled to recover his salary during the term for which
he was originally appointed; whether, in other words, the
appointment of an officer of a municipal corporation, with
a fixed salary for a definite term of office, operates as a
contract between the public and the individual, whereby
they are bound to pay that salary during the term for
which he is appointed, or so long as he continues *de jure*
in office. A question was made upon the argument,

whether, admitting the power of council to pass the resolution, it did in fact amount to a discharge from office. Its terms are, that the city clerk be directed to notify the chief of police and the five assistant policemen, "that their services hereafter will not be required;" that, in common parlance, when addressed by an employer to the employed, is understood as a discharge from service. So it was obviously intended by council, and so it was understood and accepted by the mayor and police.

The city clerk says, "the resolution disbanding the police was taken by me, and the chief of police put the resolution up in the station-house of the police. The chief called up the policemen, pointed to the notice, called their attention to it, and said they were discharged. The chief told the policemen they were disbanded under the resolution, and said he would not have charge of them any more, and called the resolution their death warrant. He also told them to deliver up their stars and emblems, and they laid them down, and did not make any objection." The mayor says, "I do not think the policemen ever applied to me to see what they should do after they were discharged. I recognized the plaintiff and the other policemen as policemen until after the passage of the resolution disbanding them; I treated them as such, and gave orders to them as such up to that time. After the 9th of January, 1856, there was no police force in Hoboken; none that were acting at that time." However informal or unlawful the resolution of council may have been, it evidently was understood, and operated as a discharge in fact of the police force. From that time they ceased to act. There is no evidence that from that time the plaintiff did, or offered to do, any service whatever as policeman. He was not a policeman de facto. He could not have been held responsible for any neglect or breach of duty in his office. The plaintiff then claims, and must recover solely on the ground of his contract. The amended declaration contains no averment of service. He insists that his ap-

pointment to office was a contract on the part of the city to pay him a stipulated salary for a specified service during a given time, and that, having been unlawfully discharged from that service, he is entitled, by virtue of the contract, to recover for the whole period covered by the contract. The declaration is founded on the contract, and upon this ground alone can the plaintiff recover.

This is a case of first impression in this court, and so far as I am aware, without a precedent anywhere. None was referred to on the argument, and my researches have not enabled me to find one. I know of no principle or authority to sustain it. The appointment of a public officer for a definite term with a fixed salary bears no analogy to a private contract between individuals for service. The private contract is purely voluntary. Both parties are bound by its stipulations. The employer can neither alter the time or mode of payment, nor vary the service to be rendered, nor abridge the time of service. The employed cannot abandon the service. Each is liable to the other for breach of contract on failure to perform. But an appointment to a public office during a term of years, and the acceptance of such office, is not a contract between the government and an individual that the officer will serve, or that the government will pay during that period. The acceptance may not be a matter of choice, but of compulsion; and where the acceptance is voluntary, the officer is not bound to serve during the term. He may remove from the state, or resign, or otherwise determine his official relation, without a violation of contract. 2 *Denio* 272; 7 *Hill* 81; 2 *Sandf. Sup. C. R.* 355; 1 *Seld.* 296.

If he be guilty of malfeasance or neglect of duty, no action by the government for a breach of contract lies against him. The remedy is by indictment or impeachment. *The King* v. *Holland*, 5 *T. R.* 607; *Wilson* v. *Com.*, 10 *Serg. & R.* 373; *Wharton's Cr. Law* (4th ed.) §§ 2514–15. And, on the other hand, the government may abolish the office, and thereby terminate the service without a viola-

tion of contract. So, in the absence of constitutional restriction, the compensation or salary of public officers may be diminished, or their duties increased, or the mode of remuneration be changed during their continuance in office, without any infringement or violation of contract. An appointment to a public office, therefore, either by government or by a municipal corporation, under a law fixing the compensation and the term of its continuance, is neither a contract between the public and the officer that the service shall continue during the designated term, nor that the salary shall not be changed during the term of office. It is at most a contract that while the party continues to perform the duties of the office, he shall receive the compensation which may from time to time be provided by law.

Whether the officer be appointed immediately by the government or through the agency of a municipal corporation is immaterial. The duties to be performed, not the mode of appointment, constitute the test of his being a public officer. Is he concerned in the administration of public duties? Is he invested with any portion of political power partaking in any degree in the administration of civil government, and performing duties which flow from the sovereign authority? If so, his office is a public office. *Dartmouth College* v. *Woodward*, 4 *Wheaton*.

An appointment to a public office is not a contract within that clause of the constitution which forbids the state legislature to pass any law impairing the obligation of contracts. The design of that clause was, in the language of Chief Justice Marshall, to restrain the legislature from violating the right to property, from impairing the obligation of contracts respecting property, under which some individual could claim a right to something beneficial to himself. And because an appointment to office is not such contract, it is not within the prohibition of the constitution. 4 *Wheaton*.

In *Conner* v. *The Mayor, Aldermen, and Commonalty of*

*the City of New York,* 1 *Selden* 296, Ruggles, Ch. J., delivering an opinion in the Court of Appeals of New York, said the prospective salary or other emoluments of a public officer are not the property of the officer nor the property of the state. They are not property at all. They are like daily wages unearned, and which may never be earned. The incumbent may die or resign, and his place be filled and the wages earned by another. The right to the compensation grows *out of the rendition of the services,* and not out of any contract between the government and the officer that the services shall be rendered by him. *S. C.,* 2 *Sand. Sup. Court R.* 355.

In *The People, on the relation of Perry,* v. *Thompson,* 25 *Barb. R.* 73, an application was made by one of two contestants to the office of mayor of Albany for a *mandamus* to the chamberlain of the city to compel the payment of the applicant's salary as mayor for one year. The application was refused, on the ground that the salary was a debt, and might be recovered by suit against the corporation like any other debt. But in that case, as appears by the report, (and more fully in the report of *Morgan* v. *Quackenbush,* 22 *Barb.* 72,) the applicant had been in the actual possession of the office, and had discharged its duties.

And in the recent case of *Mincho* v. *The Mayor, &c., of New York,* decided by the Superior Court at December Term, 1858, the complaint alleges not only that the plaintiff was appointed a policeman, and entitled to the exercise of the office during the term of two years, but that during the whole of that period he performed the duties of the office.

There was a failure on the part of the plaintiff to prove the *contract* set out in his declaration.

Aside from the objection that there is no contract between the parties upon which the plaintiff can rely for a recovery, the action ought not to be sustained upon principles of public policy. It is a new mode of trying, in a

collateral way, by an action for the salary, the title to a public office. The great question contested on the trial of this cause was the right of counsel to remove the officer for the cause assigned, and the validity of the removal. Several of the errors assigned involve these very questions. If the principle is valid, it will apply as well to officers elected by the people as to those appointed or removed by state or municipal authority; and whenever there is a contest touching the result of a popular election or the validity of an appointment to or a removal from office, the question is to be settled by an action for the salary. The incumbent of the office would be entitled, as against the corporation, to recover his salary. The claimant may, as in this case, acquiesce in his removal from office, and at the expiration of two or five years establish his title and recover his pay, though his office may have been filled, and the salary received by another. He may thus recover compensation not only for services never rendered, but may compel the corporation to pay twice for the same service. It would supply an ingenious device by which both candidates, if they could not enjoy the honor, might at least reap the emoluments of the office.

If the plaintiff was improperly removed, the law furnishes other more efficient and appropriate remedies. A *mandamus* lies to a municipal corporation to compel the authorities to admit to the legal possession of any public office in the corporation. *Willock on Corp.* 368, §§ 74, 75. So when he has been unjustly removed or suspended, a *mandamus* lies to compel his restoration. *Ibid.* 377, § 96.

If another has improperly intruded into or usurped his office, the remedy is against the intruder by *quo warranto* or other proceeding for his removal, or by action for the emolument.

But whatever may be the proper form of the remedy, or whether there be any, it is clear that an action of debt upon contract against the city is not the appropriate mode of redress.

City of Hoboken v. Gear.

Upon this ground the judgment below should be reversed, and judgment of non-suit entered, with costs to the time when the motion to non-suit was originally made in the court below, and as if it had then been granted.

This conclusion renders it unnecessary to express any opinion upon the other assignments of error.

VREDENBURGH, J. This was a suit brought by Gear, below, against the defendants, to recover salary as a policeman from the 23d of June, 1855, to the 23d June, 1857.

The jury found a verdict for the plaintiff below, which is brought here upon exceptions.

The first taken was that the court below permitted the plaintiff to give in evidence an ordinance of the defendants, passed June 18th, 1855, to establish a night police. The objection to its admission was, that the ordinance had not been published for twenty days, as required by the charter. The charter (*Pamph. Laws* 1855, *p.* 460,) provides that every ordinance shall be published for the space of twenty days, in at least one newspaper, before it shall go into effect. By the other evidence, it appeared that this ordinance was published in one newspaper on the 23d June, the 30th June, and the 7th July, 1855.

It was contended, by the defendants, that there should have been twenty days between the first and last insertions. But I do not so understand the act. It does not prescribe that it shall be inserted in the paper by periods, either daily or weekly, but merely says it shall be published in a paper twenty days before it goes into effect. It does not provide, or was it intended to provide, for more than one insertion. It can only mean that the ordinance shall not be binding on the citizens until twenty days after its publication in its first number.

The act says that sheriffs and other officers shall give notice of sales of real estate for sixty days in five of the

City of Hoboken v. Gear.

most public placés.   Does it mean that they shall put up a new notice every day?

I see no error in this ruling.   As to the second and third exceptions, I concur in the opinion of the Chief Justice.

The fourth exception is, that the defendants offered in evidence the written resignation of the plaintiff, as policeman, made in January, 1856, which the court overruled.   It was overruled upon the ground that when offered there was no evidence connecting the plaintiff and defendants with the paper as an actual resignation, tendered by the one and accepted by the others.

By the charter, (*Pamph. Laws* 1855, *p.* 461, § 37,) it is provided that resignation of any office held under the council, by the provisions of this act, may be made to the council.

Samuel W. Carey, the city clerk, says: I have seen his (the plaintiff's) resignation as policeman on file; one of the signatures to it is his; I know his handwriting; it is in my office; it was left with me by the mayor, January or February, 1856; I was then city clerk; I hold it as an individual, not as clerk; I considered it as not given me as clerk, because I so construed the words of the mayor.

Cornelius V. Clickner, defendant's witness, testified that he was mayor in January, 1856, and Carey, city clerk. The resignation of the plaintiff was handed me, as mayor; I handed it to the city clerk, to file in his office; I intended to file it with him as an official paper; I think it was handed me by a man of the name of Whitlock; I filed it because I wanted to preserve it as evidence; I told Carey to file it in his office when I handed it to him; I did nothing with the paper, but handed it to Carey; it was handed to me about the time it bears date; after I handed Carey the resignation they passed the resolution disbanding the police.

It was further in evidence that after this resignation was thus filed in the office of the council, they resolved

City of Hoboken v. Gear.

to disband the police force for want of funds, posted up a copy thereof in the police office, served it personally on the plaintiff, sent an agent to him demanding his emblems of office, which he thereupon surrendered, ceased thereafter to act further as a policeman, and went generally into other business. This is, it appears to me, some evidence connecting the plaintiff and defendants with the paper as an actual resignation.

There is certainly ample evidence connecting the plaintiff with it, for he signed it, and delivered it to the mayor to deliver to the council.

The complaint can only be that there was no evidence of its being accepted by the council. If the mayor had actually handed it to the council, and they had handed it to the clerk to be filed, it would certainly have been an acceptance. But the mayor, supposing it would answer the same purpose, handed it to the clerk, and he filed it, and there it has ever since remained. Now, might not the jury infer that the clerk informed council that such a paper was filed, and if they permitted it to remain, it would be a virtual acceptance? Could not the jury infer that the council knew what was filed in their own archives, and if they did, and permitted it to remain, it would be a virtual acceptance?

Again, was not the actual passage by the council of a resolution disbanding the whole police force for want of funds, their service of it on the plaintiff, and demanding the emblems of office, and his surrendering them on such demand, the plaintiff presenting no more bills, his going into other business, his ceasing entirely to act as policeman, some evidence that both parties were connected with this resignation?

But, again, by filing his resignation in the office of the defendants, and leaving it there, the plaintiff gave the defendants the right to accept it at any time before it was countermanded. Was not the fact that the plaintiff left the resignation on file, his ceasing to act as policeman,

the production, by the defendants on the trial, of the resignation, and insisting that it was held, some evidence from which the jury could infer that the defendants had accepted it?

Here both parties are doing their best to dissolve the connection between them; the one sends in his resignation, throws down his insignia of office, ceases entirely thenceforth to act, and goes into other business; the other retains the resignation on their files, passes a resolution discharging not only the plaintiff, but the whole squad; sends for and receives from him the emblems of office. Nothing further is done for a year, and then the plaintiff sues for that year's salary.

I think this resolution of the 9th of January, 1856, discharging the police force, if not good as a formal removal from office under the provisions of the charter, is at least, under the circumstances, good as an acceptance of the resignation.

After the evidence was closed, the defendants called upon the court to charge that the plaintiff had not made out a case which would entitle him to recover, which the court declined to do.

The case made by the plaintiff was, that the defendants, in June, 1855, passed an ordinance that there should be appointed a chief of police and six policemen, their term of office to be two years, unless sooner removed in the manner provided for in the charter, the salary of the policemen to be $450 per year, payable monthly; the policemen to be considered always on duty, unless temporarily absent by leave of the chief, for repose and meals; his appointment a few days after under this ordinance; his service and payment under this appointment until the 10th of January, 1856. That, on the 9th of January, 1856, the defendants passed the following resolution: That the city clerk be instructed to notify the chief of police and the five assistant policemen that their services thereafter will not be required, in consequence of the means voted

City of Hoboken v. Gear.

for that purpose being exhausted; that, on the 10th of January, 1856, a copy of this resolution was put up in the station-house by the chief of police, who called the attention of the policemen to it, and told them they were disbanded under that resolution, and to deliver up their emblems of office, which they thereupon did without objection. There is no evidence of any service by the plaintiff as policeman after that.

This claim is therefore not for actual service. But the plaintiff contends that he was appointed for two years, at a salary; that he was hindered from performing the service, after the 10th of January, 1856, by the wrongful act of the defendants, and that he is consequently entitled to recover his salary for the whole two years, or until the ordinance expired by its own limitation.

To this the defendants reply that the plaintiff was either legally removed from office by the resolution of the 9th of January, or if not, his ceasing to perform the duties of his office was voluntary, and so, in either case, not entitled to his salary.

*First.* Was the plaintiff legally removed from office? If he was, then he cannot claim his salary upon any notion that there was a contract; for if he was legally removed by the council, the contract was defeated upon its own terms. It was in its very creation defeasible upon removal.

Was the resolution of the 9th of January, and its service upon him, a legal removal? Was it so in terms? It provided that the clerk notify the plaintiff that his services hereafter would not be required. This is, I believe, the usual official language of the removing, power and so universally understood; at any rate it was so understood by the plaintiff, for he puts his case upon the ground that it was *de facto* a discharge.

Had the council the power to make this removal? The 38th section of the charter (*Pamph. Laws* 1855, *p.* 462,) provides that the council, for cause, may remove any person appointed by them under the provisions of this act,

·It is conceded that the plaintiff comes within the class of persons named in this section ; but it is contended, in the first place, that this is a resolution required to be submitted to the veto action of the mayor. But it is in evidence that this resolution was submitted to the·mayor, and passed over his veto. In the next place, it is of no consequence whether it was so submitted or not.

This proceeding was intended to be one under the said 38th section of the act. Such proceedings were not intended to be submitted to the mayor, and for this, among many other reasons, viz., that the proceedings intended to be submitted to the veto power are only those which may be passed in the first instance by the mere majority of the council, whereas the proceeding in question can only be so passed by a vote of two-thirds, so that the submitting this resolution to the mayor was a merely void act; it did it neither good or harm. If a removal at all under the 38th section, it was not the less a removal because it had been submitted to the mayor.

It is contended, in the next place, that the council can only remove for cause.

The act says the council, for cause, may remove. The cause assigned in this resolution is, " the means voted for the purpose are exhausted.

It is contended by the plaintiff, in the first place, that by using the terms " for cause may remove," the legislature intended to erect the council into a kind of judicial tribunal, which could not get jurisdiction of the person without notice. Such could not have been their intent. If they had so intended, they would probably have given some more provisions for its regulation, some provisions for serving notice, of compelling the attendance and swearing of witnesses ; they would, at least, have used the usual terms in organizing such a tribunal. The expression is not " for cause shown," but simply " for cause."

In the next place, the legislature was dealing with the relations ʼbetween the superior and inferior executive offi-

cers of the city government, where such provisions are very unusual, and could only tend to embarrass, and perhaps defeat, the very objects of the charter. It could never have been intended to burthen the executive department of this nascent city with such impracticable creditors; that upon every complaint the counsel should, like the senate of the United States, resolve themselves into a high court of impeachment, to try whether or not a pound-keeper or a night scavenger had been guilty of malversation in office.

That the legislature, by these words, "for cause," did not intend a judicial proceeding requiring notice, is evident from the connection in which they use these words in the 15th section of the act. In defining the powers of the mayor, it says he shall have power to suspend any policeman for cause, to be assigned to the council in writing. Could it ever have been intended that the power to suspend could never attach to the mayor, until he had given notice and tried the truth of the cause? Is the policeman to be first tried by the mayor before he is suspended, and then again by the council, before he is removed? I am of opinion that it was not the intention that notice should be a condition precedent to the exercise of the power of either suspension or removal.

It is next contended, that even if there could be removal without previous notice, yet that the cause here assigned, viz., that the money was exhausted, is not such a cause as to raise the power; that the cause contemplated by the statute is only a certain class of causes, such as misbehavior in the officers.

It will be recollected that this is not a question upon review by writ of error or *certiorari* whether the assigned cause is sufficient, but whether the existence of any particular kind of cause is necessary to the exercise of the power.

The statute prescribes no particular kind of cause; it is merely "for cause," not for cause shown. It is not, as

we have seen, a matter requiring notice, or to be tried *per testes* or otherwise. The cause, therefore, intended by the statute need only be such as is satisfactory to the party exercising the power. What right have we to say that the legislature, by the terms "for cause," meant cause shown, or a particular kind of cause, to wit, misbehavior? If they had intended only to embrace particular cause, would they not have said so? If they had said for misbehavior only, it would necessarily have made the council a tribunal to hear and determine, and thus required notice to the party to be affected. But it was to avoid that very difficulty that the legislature specified no cause, and consequently left the validity of the cause solely to the discretion of the council, making them responsible only to public opinion, by requiring them to enter the cause on their journal. The council are made the sole judges of what shall be cause, and if they have misconceived what the law intended by cause, it can only be questioned by a tribunal of review. The act to reorganize the courts of law (*Nix. Dig.* 157) provides that the justices of the Supreme Court shall hold the courts in their respective districts, but if any justice shall be prevented by sickness or any other cause, from holding the court in his district, another justice may hold it. Was it ever imagined that any other cause was intended than one satisfactory to the justices?

It might well be questioned whether the want of funds is not good cause within the meaning of the act. At any rate, we cannot well conceive a more satisfactory one to all parties. But however that may be, it is not within our jurisdiction to question it collaterally.

I am of opinion that the resolution of the 9th January, 1856, and its service upon the plaintiff, was a lawful removal of him from office, and that, consequently, the plaintiff showed no right of action.

Nor is the case altered by considering the resolution as a repeal of the ordinance of June, 1855; for if a valid

City of Hoboken v. Gear.

repeal, the plaintiff's engagement, whatever we may call it, is still subject to the condition of the ordinance being repealed. If we call it a contract, it was a contract subject to be annulled by the repeal of the ordinance. The contingency of repeal is part of the plaintiff's contract, if there be anything of the nature of contract in his accepting the appointment.

But supposing that the plaintiff is right in his view, and that this resolution is absolutely void, is he then any better off?

The resolution of removal was either valid, or if void, the plaintiff ceased voluntarily to perform the duties of his office, and so not entitled to the salary. It is not pretended that he was prevented from serving by the physical force of the defendants; but that, upon this void resolution of the council being shown to the policemen, they voluntarily threw down their emblems of office and disbanded. If the plaintiff had been discharged or prevented from serving by the defendants, or by anybody authorized by them, he might, perhaps, have been entitled to his salary without performing its duties; but in the aspect he is now claiming it, he insists upon the contrary of all this. The defendants are one body, the council is another, and the plaintiff insists that not the defendants, but a third body, to wit, the council, came to him with a void order of this third body, and discharged them; that the council had no right to make such order; that it was in fact a void act; that the act of the council was no legal discharge. Then why did they not go on? Why throw down their stars and disband?

The plaintiff likens his case to that of private parties. As where one employs another to work for him for two years, and at the end of the first year discharges him without legal cause. The cases might have been, perhaps, similar here, if the plaintiff had been discharged by the party for whom he was doing the service, by the party who legally employed him, to wit, the defendants.

But he chose to throw down his emblems of office, upon what, he insists, was the void act of a third party, to wit, the council. If I employ another for two years, and at the end of one, discharge him without cause, I may be liable; but if he choose to go off upon the unauthorized statement of another, either that I do not want him, or that I cannot pay him, it is a voluntary abandonment of the contract on his part, and he cannot hold me responsible for the balance of his salary. If he wishes so to do, he must wait either till I do discharge him, or somebody by me authorized does so. The plaintiff is chargeable with knowledge of the law, and if this resolution of the council of discharge was void, with the knowledge, when it was served on him, that it was so, and if he thereupon chose to dissolve himself of the emblems of office, it was his own voluntary act, and the contract, if contract there were, was dissolved not per force, but per agreement.

Justices OGDEN and WHELPLEY concurred.

CITED in Price v. N. J. R. R. & Trans. Co., 2 Vr. 234; Joslin v. N. J. Car Spring Co., 7 Vr. 147.