## JAMES H. LOVE v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

1. Acts of the legislature, and ordinances of city councils, or boards fixing the terms and salaries of municipal officers, are not in the nature of contracts with such officers.
2. The legislature may authorize the reduction of the salary of the city collector of Jersey City, appointed for a term of three years, during the continuance of such term.
3. If such officer continue in office, receiving warrants for monthly payments of his salary during the term, he waives thereby all objections to such reduction.

This case is a special finding of the justice at the Hudson Circuit, without jury, in nature of a special verdict, and the facts found and returned with the postea, were in substance as follows :

March 31st, 1871. "The mayor and aldermen of Jersey City" were incorporated, and, by said act, to the board of finance and taxation was committed the general management and care of the finances of said city, and the several departments thereof.

By a supplement to said act, approved March 24th, 1873, it was, among other things, enacted that the said board of finance and taxation should appoint a collector of revenue for said city, who should hold his office for the term of three years, and might be removed by said board for cause, and who should receive an annual salary of $5000, and give bonds

Love v. Mayor, &c., of Jersey City.

for the faithful performance of his duties in such sum as said board should approve; that, under and by virtue of said act, on April 10th, 1873, said board appointed the plaintiff city collector, and that he duly qualified as such, held the office, and performed the duties thereof for the said term.

By a further supplement to said act, passed March 27th, 1874, it was, among other things, enacted that certain city officers should receive annual salaries, *not to exceed the salaries therein specified, in lieu of the salaries then paid them in their respective offices:* among others, to the city collector, $4000.

On May 29th, 1874, the board of finance and taxation passed, and the mayor approved a certain resolution, that the salaries of the city officials, from and after the 1st day of May, 1874, be fixed at certain sums; among others, James H. Love, city collector, per annum, $3000.

Since the passage of the resolution, warrants have been issued to the said city collector monthly, (including the month of May, 1874,) signed by the mayor and clerk, and countersigned by the comptroller and treasurer of said city, at the rate of $3000 per annum; each warrant stating on its face that it was issued for his salary as city collector for the month therein named; and the plaintiff has drawn the money on the warrants. The warrants were receipted for and endorsed by the plaintiff as received on account, but no payment has been made or warrant issued since March 31st, 1876. The plaintiff was reappointed city collector, April 6th, 1876, by the board of finance, for another term of three years, duly qualified as such, and continues to hold such office and perform the duties.

After the passage of the resolution of May 29th, 1874, the plaintiff notified some members of the board of finance and taxation that he should claim payment of the salary to which he was legally entitled, notwithstanding said resolution.

Argued at June Term, 1878, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER, and KNAPP.

Love v. Mayor, &c., of Jersey City.

For the plaintiff, *G. Collins.*

For the defendants, *L. Abbett.*

The opinion of the court was delivered by

SCUDDER, J.   This action is brought by the plaintiff to recover the unpaid balance of his salary at the rate of $5000 per year, for the full term of three years for which he was elected, and during which he performed the duties of his office as city collector.   He bases his claim on the act approved March 24th, 1873, by which his appointment was directed to be made by the board of finance and taxation for the term of three years, and the salary designated at $5000 per annum. He insists, that after he had entered on the duties of the office, the term and the salary were fixed, and could not be changed by the subsequent act of the legislature, and the resolution of the board.   This must be founded on the idea that his employment was in the nature of a contract for services which could not be altered without his consent.   But his appointment was not a contract for private service between individuals, but a selection for the duties of a particular office in a municipality, which, together with all the local offices and officers within it, are created by the legislature and subject to legislative control.

Judge Dillon says, (*Municipal Corp.*, § 168,) "the legislature in the absence of constitutional limitation, may create and abolish offices, add to or lessen their duties, abridge or extend the term of office, and increase, diminish, or regulate the compensation of officers at its pleasure."   Neither acts of the legislature, nor ordinances of city councils or boards, naming terms and salaries are in the nature of contracts with officers. Although the term and the salary may be named in the charter, yet there is no contract for a stipulated time or price that is binding on the public.   A distinction is made in some cases between such services as are public or official and those that are professional and private ; but in this case no such question can arise, as the services rendered by the city collector were the ordinary duties of a public officer in the collection of taxes.

These principles are settled in some leading cases referred

to in the book above cited, some of them covering this one in all points.

But we need not go elsewhere to look for authority, for in *City of Hoboken* v. *Gear*, 3 *Dutcher* 265, this court held that an appointment of a police officer for a definite term and stated salary was not a contract that the city will pay during the term for which the officer was appointed, and that the city might determine the relation. When, therefore, the plaintiff in this case assumed the duties of the office to which he had been appointed by the board of finance, he did so, subject to legislative control both as to his term and compensation. After he had been in office about one year this authority was exercised, and the act passed by which his salary was reduced. If he was dissatisfied he should have tendered his resignation. It might have been accepted, and he discharged, if unwilling to perform the duties of the office at the smaller rate of compensation. *State* v. *Ferguson*, 2 *Vroom* 107. His continuance in office was a consent to the reduction, of which he had full knowledge.

But it is further said that the power given by the legislature to the city was to reduce the salary from $5000 to $4000, and the board of finance and taxation reduced it to $3000.

The act of March 27th, 1874, enacts that there shall be paid to this officer an annual salary, in lieu of the salary then paid, not to exceed the sum of $4000. The limitation is here confined to the excess, and does not extend to the diminution. A maximum rate is fixed, but it is not said that it shall not be less than $4000 or any other sum. This limitation leaves the minimum rate to be settled in the discretion of the official body to whom the control is delegated.

It is further said that if this be so, the board of finance and taxation was not the body authorized to make the reduction. My opinion is, that by the power of appointment and control given to this board in the case of this officer, they had such authority; but it is not necessary to decide this point, for it will never be tolerated that a municipal officer shall receive his pay at a fixed rate without dissent, hold his office for his

full term, and at the end demand a higher rate named in some prior act. If he was not satisfied he should have offered his resignation, and the city would have found some one to take his place for the reduced salary. His continuance in office was an assent to the reduction of his salary, and his receipt of monthly warrants and payments during the whole term is an estoppel against any error in the mode of reduction, or the amount fixed by the board of finance and taxation. This principle was applied in *Stagg* v. *Insurance Co.*, 10 *Wall.* 589, to an insurance agent, who had received a general circular from the company, which contained the terms of his compensation, and after acting under it several years without complaint it was said that he was . estopped to deny that he was employed on these terms. The production of a circular of prior date with other terms of compensation did not alter the case. A public officer is no less strongly bound by his active consent to the terms of his employment, where he has every month received his salary at the reduced rate, with nothing more than an informal notice to some member of the board of finance and taxation that he shall claim a greater compensation. He had the simple remedy in his own hands, if he felt aggrieved by the action of the legislature and board of finance. If he continued in office his acquiescence establishes his consent to the terms fixed by the board.

The resolution of the board of finance, dated May 29th, 1874, fixing the compensation at $3000 from and after the 1st day of May, 1874, and after almost the entire month's services had been rendered, was objectionable; but he received the warrant for that month's pay at the rate of $3000 per annum, without formal protest or exception, and is now concluded by such acceptance.

By the finding it appears that no payment or warrant has been made since March 31st, 1876. The suit was began January 18th, 1877. This will entitle the plaintiff to his salary from March 31st, 1876, to December 31st, 1876, at the rate of $3000 per year, or $250 per month, which amounts to $2250, for which amount the plaintiff is entitled to judgment.