248 N.J. Super. 37 (1990)
589 A.2d 1373
WILLIAM T. HIERING, JR. AND THE LAW FIRM OF HIERING & HOFFMAN, PLAINTIFFS,
v.
TOWNSHIP OF JACKSON, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF JACKSON, COMMITTEEMAN RICHARD BORYS, COMMITTEEMAN ARTHUR CONWAY, COMMITTEEMAN-ELECT NEIL O'CONNELL, DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided February 9, 1990.
*38 Arthur Stein for plaintiffs (Stein & Rogers, attorneys).
Joseph L. Foster for defendants (Russo, Foster, Secare & Ford, attorneys).
SERPENTELLI, A.J.S.C.
Can a township which has executed an agreement to employ an attorney for a four year term pursuant to a statute authorizing a four year appointment, terminate the attorney's services before the end of the four year term when that statute has been repealed and replaced by a statute providing for a one year term? This novel question may have statewide implications. It arises in the following context.
On January 1, 1989, plaintiffs, William T. Hiering, Jr. and the law firm of Hiering and Hoffman, were appointed to the office of township attorney in Jackson Township. The appointment was made for a term of four years consistent with the provisions of N.J.S.A. 40:145-13. A resolution was adopted by the township committee on January 1, 1989, authorizing the execution *39 of a contract with plaintiffs for professional services for a term from January 1, 1989 to December 31, 1992. The contract embodying this term and the other conditions of employment was executed on January 1, 1989.
On August 11, 1989 the Legislature enacted N.J.S.A. 40A:63-1 et seq. as part of a comprehensive revision of laws relating to the township form of government. N.J.S.A. 40A:63-9 repealed N.J.S.A. 40:145-13, effective January 1, 1990, thereby eliminating the authority for a four year appointment. Instead, N.J.S.A. 40A:63-6(b)(3) established the term of office for the township attorney as one year by incorporating the provisions of N.J.S.A. 40A:9-139.
On December 22, 1989, plaintiffs received a letter signed by two committeemen and a committeeman-elect, a majority of the five person council which would reorganize on January 1, 1990, advising that their services would no longer be required as of that date. On December 29, 1989, plaintiffs filed a complaint and order to show cause challenging the anticipated action of the new majority of the committee. Among other things, plaintiffs sought to restrain the appointment of another attorney and to obtain a ruling that plaintiffs were entitled to complete their four year term.
On that date, the court denied interim relief on the grounds that the application was premature (no appointment having yet been made), that there was no showing of irreparability even if the appointment was made and that the law was uncertain with respect to plaintiffs' likelihood of success on the merits. In the interests of judicial economy, the court provided for a return date on the substantive issues in the event that the governing body replaced plaintiffs at the reorganization meeting of January 1, 1990. Plaintiffs sought interlocutory relief from the Appellate Division which was denied.
On January 1, 1990, defendants did adopt a resolution appointing other counsel as the township attorney for one year *40 thereby terminating plaintiffs' employment. The case is now ripe for disposition on the merits.
This rather complex issue could have been resolved easily by an explicit statement of legislative intent. But as is so often the case, we are left only with the end product and no clear statement of its ingredients. N.J.S.A. 40A:63-1 et seq. which brought about the repeal of the four year term and the creation of the one year term became law as chapter 157 of the Laws of 1989. The legislative statement accompanying Assembly Bill 1449, the source of the statute here in dispute, explained that it was a revision of the laws pertaining to township and village forms of government. It noted that the aim of the legislation, in general, was to provide a law describing the township and village forms of government which is readily understandable by both citizens and municipal officials and which reduces ambiguity and conflict with more recent government law  a bit of irony given the debate before this court. The assembly statement noted that the bill resulted from the recommendations of a report made to the Legislature and Governor by the County and Municipal Government Study Commission on the traditional forms of municipal government.
The report referred to in the legislative statement is entitled Functional Fragmentation And The Traditional Forms Of Government In New Jersey (hereinafter report). The 78 page document dated November, 1985, reviews the statutes that govern cities, towns, boroughs, townships and villages. The commission concludes, among other things, that the laws are frequently archaic, sometimes misleading and often confusing. It finds "that a substantial statutory revision of the traditional-form government laws will improve local officials' ability to operate traditional-form municipalities." Report at xii. The report, however, throughout its detailed analysis does not speak to the controversy before this court. Indeed, there is no discussion of the office of attorney or the differing terms of appointment in the existing law. In short, there is nothing in the report that is directly on point.
*41 Inferences might be gleaned from the report to support the position of either party. Plaintiffs argue that a principal thrust of the report and the commission's recommendations is elimination of fragmentation in the statutory law. Thus, plaintiffs contend the commission was looking for uniformity among the various forms of government wherever possible. That could easily be accomplished for the office of attorney by selecting a one year term in townships to coincide with the prevailing law in other forms of government. Again, there is nothing in the report that explicitly supports plaintiffs' argument. Defendants counter by asserting that a primary purpose of the commission's recommendations was to streamline the organization of municipal government. Included in that goal was an intent to allow for the creation of an administrative structure which would be responsive to the needs of those who must govern. In fact, one of the commission's recommendations supports that position:
... [B]ecause of the importance of local elected officials, the scope of their responsibilities and the need to have them clearly accountable to their citizens, each municipality ... has, and should exercise the clear right to adopt, its own preferred administrative organization; .... [Report at xii; emphasis supplied]
Clearly, defendants claim, the attorney is an integral part of the administrative team and those accountable should not have thrust upon them a counsel who is not of their choosing. The trust and confidence inherent in any attorney-client relationship is critical to the efficient operation of local government.
While defendants' argument has logical appeal and plaintiffs' position is supported both by the title of the report and the effect of its recommendations relating to the attorney's appointment, the fact is that the report simply does not pass squarely on the issue. The same can be said of the legislation itself, although defendants can claim the edge in the battle of semantics when the statute is reviewed. Two sections of the act convey an inference that the Legislature did not intend to protect four year appointments existing on the effective date of the statute.
First, N.J.S.A. 40A:63-3(i) provides:

*42 No officer, who has obtained tenure by any provision of any section herein repealed by section 40A:63-9 of this act, shall be affected in any way by the repeal. [Emphasis supplied]
It can be implied that since the attorney is an officer who has not obtained tenure, the attorney's term is not protected. However, that type of negative implication is hardly the kind of authority upon which this court would like to base any decision.
Second, N.J.S.A. 40A:63-6(b)(3) gives the township committee the power to create such offices and positions as it deems necessary and provides:
... Other than the township attorney, engineer, building inspector, the clerk, tax collector and tax assessor who shall serve for terms as provided in Chapter 9 of Title 40A of the New Jersey Statutes, these officers shall serve at the pleasure of the committee.
Defendants assert that this provision demonstrates the legislative intent to have the one year term provided in N.J.S.A. 40A:9-139 apply to the township attorney. However, that argument begs the question since no one denies the legislative intent to fix all future appointments at one year. The controversy centers on whether the Legislature intended that existing terms of office which extend beyond January 1, 1990, would be terminated as of that date or only that new appointments would be governed by the one year limitation.[1]
Having found no definitive legislative intent, the court must turn to existing case law. Although there is no case directly dispositive, there are some guideposts for the court to follow. At first blush, it appears that this controversy could be resolved by reference to the Rules of Professional Conduct. RPC 1.16, which deals with declining or terminating representation, provides in part:

*43 (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(3) the lawyer is discharged.
However, the meaning of this rather lucid rule has been blurred in its application to representation of governmental bodies by the decision of the Appellate Division in Pillsbury v. Board of Freeholders of Monmouth Cty., 140 N.J. Super. 410, 356 A.2d 424 (App.Div. 1976).[2]
In Pillsbury, a county counsel was appointed pursuant to N.J.S.A. 40A:9-13 for a three year term. Prior to the completion of that term, the board of freeholders appointed a special counsel with the intention of divesting the existing county counsel of his work. The board stopped short of terminating the employment of the incumbent county counsel but that was the effect of its actions. The trial court found that the board had acted unlawfully and rejected the assertion that the rule of professional conduct quoted above (then DR2-110(B)(4)) permitted it to terminate the employment of plaintiff notwithstanding the three year appointment. The trial court held that the statute establishing a three year term and the disciplinary rule were inconsistent. It reasoned that the statute evinces a specific legislative policy from which it can be inferred that the Legislature sought to guarantee an appointee at least three years in office. Thus, the statute should prevail. Furthermore, the court drew a distinction between the discharge of an attorney in a private client-attorney relationship and the termination of the employment of county counsel, who does not *44 represent the members of the board individually but only collectively. The trial court said:
As a practical matter, county counsel's advice to the members of the board relate to public business, not their private affairs. The confidential phase of the relationship is altogether different from that between a private client and his attorney. [Pillsbury v. Board of Freeholders of Monmouth Cty., 133 N.J. Super. 526, 535, 337 A.2d 632 (Law Div. 1975).]
The Appellate Division in Pillsbury first affirmed the judgment of the Law Division "substantially for the reasons expressed" in the trial court opinion. Pillsbury v. Board of Freeholders of Monmouth Cty., supra, 140 N.J. Super. at 413, 356 A.2d 424. However, the Appellate Division added the following comment:
The post of county counsel is a public office. [citation omitted] Except as to those positions created by the Constitution, public officers are creatures of the Legislature. The Legislature alone may determine the duties and the interrelation among the public offices it establishes. Within the constitutional framework the Legislature is the architect of the structure of government. [Citations omitted]
The fact that the position of county counsel is a public office is important for two reasons. It supports the constitutionality of the act of the Legislature in fixing the term, and secondly, it establishes that the attorney holding the office is not only involved in the practice of law, but also, because of his status as a public officer, has the duty of carrying on operations of government, .... [citation omitted] Contrary to the suppositions of the board, the office of county counsel exists for the protection of all of the citizens of the county and not solely for the benefit of the freeholders elected to govern that county. [Id. at 413-414, 356 A.2d 424]
This court respectfully suggests that if a line is to be drawn between those instances in which the Rules of Professional Conduct are to be strictly or liberally interpreted  a distinction which this court would not favor nor which appears to be contemplated by the rules  an argument could be made that the strictest application should be in instances of attorney-client relationships in the setting of governmental representation. While it is true that the attorney serves the public at large, it is also true that the public has elected the officials who retain their counsel. Surely the public can presume that their chosen officials, or the majority of those officials at least, should have freedom to select the professionals with whom they will work in *45 harmony to provide the good government the citizens believe they will obtain through their vote. The will of the electorate may be frustrated by not giving those they have elected the right to fashion their team to carry out the mandate inherent in their election. Furthermore, requiring the majority of the governing body to receive the advice of counsel in whom it does not exhibit trust and confidence hardly engenders public respect, not to mention organizational stability and efficiency. Thus, the evils arising from an attorney's refusal to terminate the attorney-client relationship when discharged by the client are multiplied many fold in public representation as opposed to a one on one private relationship. Additionally, our profession brings greater disrespect upon itself when the discharge is resisted in the public arena because of the inevitable notoriety of the dispute.
Approximately six years after the Pillsbury opinion, the Appellate Division decided Taylor v. Hoboken Bd. of Education, 187 N.J. Super. 546, 455 A.2d 552 (App.Div. 1983). In that case, the board of education sought to terminate the employment of an attorney who was not appointed for a fixed term but who claimed protection against dismissal under the Veterans Tenure Act. N.J.S.A. 38:16-1 et seq. In rejecting the claim of tenure, the court relied upon the disciplinary rule involved in Pillsbury and found that the rule must prevail over the legislative act. The court noted that the only case interpreting the disciplinary rule in relation to a statute was the Pillsbury decision. The Appellate Division sought to distinguish Pillsbury as follows:
... The trial judge held that DR2-110(B)(4) `did not indicate nor can it be assumed that it contemplated a situation such as is before me,' and determined that the office of county counsel involves public legal representation as distinguished from the confidential nature of a private attorney-client relationship. [citation omitted] The Appellate Division affirmed, but met the issue by holding that the office of county counsel is a public office, a creature of the Legislature, and that body has the constitutional right to `determine the duties and the interrelation among the offices it establishes.' The court held that `[w]ithin the constitutional framework the Legislature is the architect of the structure of government.' It also noted, in supporting the constitutional *46 validity of the statute over the disciplinary rule, that county counsel `is not only involved in the practice of law, but also, because of his status as a public officer, has the duty of carrying on the operations of government.' [citations omitted] Thus, in the particular circumstances of that case, the Legislature's constitutional prerogative prevailed. The case is clearly distinguishable from the one at hand. [Id. 187 N.J. Super. at 555, 455 A.2d 552]
The court in Taylor does not articulate expressly why there is a distinction. It also does not address the statement by the Appellate Division in Pillsbury that the trial court decision was affirmed substantially for the reasons given by the trial judge. As noted, those reasons included a finding that the disciplinary rule did not apply in the same manner to the county counsel as it did to a private client-attorney relationship. The Taylor court concluded:
In our view it would be gross judicial eccentricity to acknowledge the disciplinary rule, the constitutional power of the Supreme Court to enact it and yet hold that the legislative grant of tenure controls. [187 N.J. Super. at 559, 455 A.2d 552]
This court agrees with the finding in Taylor and it is hard-pressed to find that the factual differences between Taylor and Pillsbury justify a different result. The Appellate Division decision in Pillsbury seems to turn on the principle that the Legislature may determine the duties and relationship of the public offices it establishes. It is the architect of the structure of local government. The same, however, can be said of the Veterans Tenure Act involved in Taylor. It also provides job security through legislative mandate but that clearly enunciated legislative policy was not enough to override the Supreme Court's right to regulate those licensed to practice law.
Well before the decision in Pillsbury, our Supreme Court held that the terms and conditions of public service in offices or employment rest in legislative policy rather than in contractual obligation. Therefore, the terms may be changed except as the Constitution prohibits, even if the change has retroactive impact. Spina v. Consolidated Police and Firemen's Pension Fund Commission, 41 N.J. 391, 197 A.2d 169 (1964). In Spina, Chief Justice Weintraub collected the cases supporting these principles at page 400 of his opinion and relied, in part, on *47 the decision of the United States Supreme Court in Dodge v. Board of Education of City of Chicago, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937). In that case the Court said:
... [A]n act merely fixing salaries of officers creates no contract in their favor, and the compensation named may be altered at the will of the Legislature. This is true also of an act fixing the term or tenure of a public officer or employe of a state agency. The presumption is that such a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise. [302 U.S. at 78-79, 58 S.Ct. at 100, 82 L.Ed. at 62; emphasis supplied]
A public office is not created for the benefit of the holder but rather for the purposes of carrying out the operations of government. There is no vested interest or contractual commitment which can frustrate the legislative policy. The prospective emoluments of office are not the property of the incumbent and can be divested at the will of the Legislature absent constitutional protection. De Marco v. Board of Freeholders of Bergen Cty., 21 N.J. 136, 121 A.2d 396 (1956) and the cases collected at page 140 therein and in the trial court opinion in De Marco at 36 N.J. Super. 382, 386, 115 A.2d 635 (Law Div. 1955).
The principles enunciated in Spina and De Marco as well as other recent authority have their roots in some well-seasoned law which, though over a century old, has remained imbedded in our jurisprudence. The seminal case is City of Hoboken v. Gear, 27 N.J.L. 265 (Sup.Ct. 1859). In that case, plaintiff was appointed a policeman for a two year term. Approximately seven months thereafter the city abolished the police department. Gear claimed that he had a contract which entitled him to be compensated for the full two years. The court rejected the argument holding that appointment to a public office with a definite term and stated salary did not create a contract. It found that Gear was free to leave at anytime and the government was free, absent constitutional restrictions, to change the terms of employment. The court concluded, "[a]side from the objection that there is no contract between the parties ... the action ought not to be sustained upon principles of public policy." Id. at 279.
*48 Relying on the decision in Gear, the court in Love v. Mayor and Council of Jersey City, 40 N.J.L. 456 (Sup.Ct. 1878) held that a tax collector appointed for a three year term at an annual salary of $5,000 could have his salary reduced during that term by act of the appointing authority. In Kenny v. Hudspeth, 59 N.J.L. 320 (Sup.Ct. 1896), aff'd 59 N.J.L. 504 (E. & A. 1896), a judge was appointed for a five year term. Approximately four years into the term the Legislature passed an act which had the effect of prematurely ending plaintiff's employment. The court sustained the validity of the act finding that, absent constitutional inhibition, the office and its emoluments are within the control of the legislative branch of government:
... [W]henever, in its judgment, public policy requires it, [the legislative body] may declare the office vacant or transfer its duties to another officer, although the effect may be to remove the officer before the expiration of the term for which he was appointed. [Id. at 322; citations omitted]
The fact that plaintiffs in this case have actually signed a contract, unlike other cases in which the only basis for plaintiff's claim was an appointment for a term, adds nothing to their status. The contract was executed simply because the Local Public Contracts Law requires a municipality to do so whenever it authorizes the performance of professional services. N.J.S.A. 40A:11-5(1)(a)(i). The formal document does not alter plaintiffs' legal standing in light of the authority cited above. The contract can be superseded by the legislative will.
Plaintiffs' claim that the new statute is being applied to them retroactively falls into the same category as their reliance upon the executed contract. In the first place, it could be argued that the act is only being applied prospectively from its effective date on January 1, 1990. But to the extent that plaintiffs assert a retroactive effect based on what they thought was a four year guarantee of continued employment, the simple answer is that our case law establishes that they had no vested right in that expectation. And that is as it should be. The ancient authority carried down to present day cases has retained its vitality because of the fundamental soundness of *49 the principles upon which the decisions were made. The public welfare cannot be compromised by holding that the Legislature is saddled with a policy it wishes to change. Whether the policy to be discarded is a product of imprudence, political considerations, mistaken judgment or whether time has invalidated once formally valid reasons so that a new direction should be taken, individual rights must give way to the legislative determination that the public is better served by a change. Absent any constitutional restrictions or a clear statement in the legislation, it is reasonable to assume that the statute here in dispute represents that policy which the Legislature believes is now appropriate. There is no reason to delay the fulfillment of the legislative wisdom as expressed in this studied, comprehensive and remedial enactment unless the Legislature itself, had expressly deferred the consequences of the new law or, at least, exhibited a clear intention to delay its implementation. The purposes of this legislation are evident. When read in conjunction with the commission report, the statute bespeaks an intent to redress the evils caused by piecemeal and inconsistent enactments as well as to enable municipal government to be more efficient and accountable to those it serves. The achievement of these goals should not be delayed when our cases permit immediate application of the new legislative policy absent constitutional prohibition.
Thus, the court concludes that plaintiffs' services were validly terminated and the complaint will be dismissed.
NOTES
[1] This rather protracted and basically fruitless endeavor at determining legislative intent gives further meaning to the observation that there are two things the public should never see being made: sausage and law. Cf. Piscataway Tp. Bd. Ed. v. Caffiero, 86 N.J. 308, 326, 431 A.2d 799 (1981) (Clifford, J., dissenting).
[2] From what will be said hereafter, it is obvious that this court respectfully disagrees with the result in Pillsbury to the extent that it sustains the trial court holding that the Rules of Professional Conduct cited above must give way to an act of the Legislature establishing the term of office for county counsel. As will also be noted, the court questions whether the Pillsbury decision is still viable. However, absent its overruling or another decision of the Appellate Division clearly in conflict with it, the trial court may respectfully disagree with it but is bound to comply with it to the extent that it is controlling. Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 415, 169 A.2d 814 (1961).