MICHAEL R. PERRELLA, PLAINTIFF-RESPONDENT, v. BOARD OF EDUCATION OF THE CITY OF JERSEY CITY, DEFENDANT-APPELLANT.

Argued January 22, 1968—Decided March 18, 1968.

324

*Mr. William A. Massa* argued the cause for appellant.

*Mr. Albert Burstein* argued the cause for respondent (*Messrs. Wolf, Baumann & Burstein,* attorneys).

The opinion of the court was delivered by

FRANCIS, J.  On December 7, 1961, the Board of Education of the City of Jersey City, by resolution, established a Legal Department. This was done because, as the resolution asserted, "a careful and diligent survey" showed the existence of "complex and extensive legal matters." The department as created was to be headed by a Chief Administrative Counsel, a Counsel and an Assistant Counsel. The Counsel

and Assistant Counsel were to be under the general supervision of the Chief Administrative Counsel. The latter, however, did not establish their duties or his own. The duties of each attorney were set forth specifically in the resolution. The Chief Administrative Counsel was not given the authority to hire or to fire his assistants or to fix their salaries; nor was he given authority to hire or fire any clerical or other help in the so-called department. Control of all of those matters was retained by the Board.

An additional resolution adopted at the same time appointed the plaintiff, Michael R. Perrella, Chief Administrative Counsel at an annual salary of $8,000. No term of service was fixed. A Counsel and an Assistant Counsel were named also at substantial salaries. At the time of the event which produced this suit Perrella's salary had been increased to $15,000, and provision had been made for a $1,000 increment to be added the following year.

Perrella continued to act as Chief Administrative Counsel until July 8, 1964. On that date the Board adopted a resolution abolishing the "office or position" in order "to effect economies and greater efficiency." A second resolution of the same date, effective immediately, terminated Perrella's services.

There is nothing in the resolutions creating the position of Chief Administrative Counsel and appointing Perrella to it which specified that full-time services were required. The overwhelming evidence in the record shows that devotion of full time was neither expected by the Board nor given by Perrella or his two assistants. His testimony was that every third week when he was on duty according to the schedule established for himself and his assistants, he would average about three hours a day or 15 hours a week at the Board. During the other weeks when the assistants were on duty he would average "on the job" about five hours a week. These hours were said to be daytime hours, and it was testified that many hours were spent at evening meetings and on Board work. Perrella was engaged in the private practice

of law all during the period he was Chief Administrative Counsel. He testified:

"Q. So you would say that you were able to continue your private practice of law to the fullest extent during your service as chief administrative counsel?

A. Yes, I could and I did.

\*     \*     \*     \*     \*     \*     \*

Q. Did your duties as chief administrative counsel, Mr. Perrella, interfere with your handling of private practice in any way?

A. It did not."

No member of the Board of Education denied Perrella's assertion that his appointment was for part-time employment.

It is undisputed that Perrella is a veteran within the meaning of *N. J. S. A.* 38:16–1. A few weeks after the termination of his services he instituted this proceeding in lieu of prerogative writ alleging that *N. J. S. A.* 38:16–1 gave him tenure as a veteran and that he could not be deprived of his position except for good cause and after a hearing. He asserted also that his removal was political in nature and not to effect economy. Accordingly he claimed that the resolution purporting to remove him was void, and that he should be restored in his position with back pay.

After answer and pretrial conference a partial trial was held on the basic legal issues, exclusive of damages. At the conclusion thereof, the trial court held that plaintiff had tenure as a veteran and the termination of his services was not for good cause, but for political reasons. Consequently the resolution ousting him was adjudged invalid, plaintiff's restoration was ordered, and the cause was set down for further hearing on the matter of the compensation due him. Instead of completing the proceeding, defendant appealed from this judgment under *R. R.* 4:55–2.

While the appeal was pending, the Board passed another resolution on September 20, 1965 abolishing its Legal Department. The Appellate Division was so advised. After argument of the appeal, however, in an unreported opinion, it

affirmed the trial court's partial judgment, saying the evidence in the record sufficiently supported the trial court's finding that plaintiff, a veteran, had been removed for political reasons. The Appellate Division did not consider the effect of the new resolution abolishing the Legal Department. It declared, however, that the trial court's judgment should be modified to make the order restoring plaintiff to his position subject to "any lawful disposition" thereof in the meantime. Presumably because of the interlocutory nature of the matter, defendant made no application to this Court for certification to review the Appellate Division's judgment. On remand, the trial court modified its judgment as directed.

Thereafter, in an independent action, the resolution of the Board of Education abolishing the Legal Department was sustained in the trial court and later in an unreported opinion of the Appellate Division. This Court denied certification. *Witkowski v. Board of Education,* 50 *N. J.* 294 (1967).

Plaintiff accepted the decision in *Witkowski* that the Board's Legal Department was abolished properly on September 20, 1965. But he claimed on the basis of his earlier favorable judgment he was entitled to back pay between July 8, 1964 and September 20, 1965. The trial court agreed with that view and set the matter down to determine the compensation to which plaintiff was entitled. At that hearing, on the basis of the testimony previously taken, the court adjudged as a matter of law that the position of Chief Administrative Counsel was a full-time position; further, that in computing Perrella's back pay, his earnings from the practice of law should be applied in mitigation. Again, although final judgment had not been achieved, plaintiff appealed under *R. R.* 4:55–2.

The Appellate Division, in an unreported opinion, affirmed the trial court's holding that a back-pay award would be subject to mitigation. In view of the brevity of the record, however, it declined to review the finding that plain-

tiff's position was a "full-time position." The Appellate Division remanded to the trial court for the taking of further evidence, "the completion of the trial and the entry of a final judgment on all issues." In doing so it directed, and properly so, that "further appeals from interlocutory orders in this litigation, pursuant to *R. R.* 4:55–2, should be avoided."

At the renewed hearing in the trial court the parties stipulated (1) that the resolutions creating the position of Chief Administrative Counsel contained no language to the effect that devotion of full time to the Board's duties was required; (2) that they contained no language prohibiting him from practicing or continuing to practice law privately; and (3) that during the time Perrella was Chief Administrative Counsel he did continue his private practice of law and derived income therefrom.

Testimony and income tax returns were then introduced to show Perrella's gross income from the private practice of law for the years 1961 through 1965. After referring to the stipulation mentioned above, the trial judge decided plaintiff was entitled to his full annual $16,000 salary for the 14–1/2 months between July 8, 1964 and September 20, 1965. He concluded also, without stating a supporting legal rule, that under the circumstances no mitigation would be ordered. In addition, and despite the award of full salary totaling $19,333.32 without mitigation, a fee of $3,000 was allowed plaintiff's counsel, also chargeable against defendant. Upon entry of judgment, a third appeal was taken. The Appellate Division affirmed in an unreported opinion, and we granted defendant's petition for certification. 50 *N. J.* 292 (1967).

The piecemeal processing of this litigation has now reached a final judgment. Our certification has brought to this Court for the first time all aspects of the controversy. At oral argument we questioned whether plaintiff had tenure status with the Board at the time of his discharge. Following discussion of the problem, the parties were given leave to

file additional memorandums on the subject, and they have done so. Accordingly, we shall consider first whether plaintiff acquired tenure under *N. J. S. A.* 38:16–1 upon his appointment as Chief Administrative Counsel.

There is no doubt plaintiff qualifies as a veteran. *N. J. S. A.* 38:16–1, as it existed at the time of his appointment, provided that:

"No person now holding any employment, position or office under the government of this State, or the government of any county or municipality, including any person employed by a school board or board of education, or who may hereafter be appointed to any such employment, office or position, whose term of employment, office or position is not now fixed by law, and receiving a salary from such State, county or municipality, including any person employed by a school board or board of education, who has served as a soldier, sailor, marine or nurse, in any war of the United States, * * * and has been honorably discharged from [such] service, * * * prior to or during such employment in or occupancy of such position or office, shall be removed from such employment, position or office, except for good cause shown after a fair and impartial hearing, but such person shall hold his employment, position or office during good behavior, and shall not be removed for political reasons."

This Act does not apply to appointments which are made for a fixed period of time. But no appointment is deemed to be fixed by law or coterminous with that of the appointing board or body because it was made by a noncontinuous board or body. See *L.* 1942, *c.* 83, *p.* 326, amending *N. J. S. A.* 38:16–1.

The precise question posed on the facts here is whether Perrella, as part-time Chief Administrative Counsel to defendant Board of Education, had veteran's tenure and therefore was not removable except for good cause after notice and hearing. If that question is resolved in his favor, we shall not deal with the finding of the trial court and the Appellate Division that his removal was for political reasons and not for good cause. The record contains adequate evidence to support their conclusion.

Veterans preference and tenure statutes have had a long existence in New Jersey. *L.* 1888, *c.* 104, *p.* 135; *L.*

1895, *c.* 155, *p.* 317, *Gen. Stat.* 3702; *L.* 1907, *c.* 14, *p.* 37; *Comp. Stat.* 4873. They are acts of general application to public employment. But it is well settled that such statutes, including the current one, *N. J. S. A.* 38:16–1, quoted above, are not applicable to an employment, position or office in the service of the State, county, municipality or board of education if later specific enactments adequately indicate a legislative intent to exclude it from tenure protection. *Koribanics v. Board of Education of City of Clifton,* 48 *N. J.* 1, 5 (1966); *Brennan v. Byrne,* 31 *N. J.* 333, 337 (1960); *Barringer v. Miele,* 6 *N. J.* 139 (1951); *Ackley v. Norcross,* 122 *N. J. L.* 569, 572 (*Sup. Ct.* 1939); *Smith v. City Council of City of Hackensack,* 70 *N. J. Super.* 209 (*App. Div.* 1961), certification denied 36 *N. J.* 300 (1962).

There is no statute which says expressly that an attorney or counsel for a local board of education shall not have veteran's tenure. There are paths of legislative making, however, which plainly reveal such an intention. Before setting out on these paths, it is necessary to call to mind the peculiar relationship which a member of the bar has as counsel to a public body. It is a position of trust and confidence. It is born in the confidence the public body, rarely of permanent status, has in the ability, honesty and personality of the individual selected. In common sense the relationship is simply that of attorney and client, basic to which, from time immemorial, has been the desirability of personal selection of the attorney by the client.

The advent of civil service legislation was later in time than veterans preference and tenure acts. *L.* 1908, *c.* 156, *p.* 235. The provisions of the Civil Service Act creating tenure for persons in the classified public service of the State, county, municipality or school district, *N. J. S. A.* 11:4–3 and 11:22–3, are *in pari materia,* and serve the same fundamental purpose as those of the Veterans Act. In fact Sections 15 and 20 of the 1908 Act conferred certain preferences on veterans in connection with original appointments to the public service. Preferences of the type referred to

have been continued throughout the various amendments, supplements and revisions of the civil service acts down to the present time. In fact, in 1941 persons with veterans' tenure who had held a position, office or employment in the State service for three consecutive years were absorbed into the classified service even though the position, office or employment held was not then classified. *L.* 1941, *c.* 91, *p.* 206; *N. J. S. A.* 11:4–3.5. See also, *e.g., N. J. S. A.* 11:1–7.1; 11:27–4. Further, the nature of the tenure granted to civil service employees in 1908 was the same, and is now the same, as that given to veterans, *i. e.,* they could not be discharged except for good cause, after notice and hearing. *L.* 1908, *c.* 156 § 24, *p.* 250; *N. J. S. A.* 11:4–3.6; 11:22–38. Thus the close relationship between the Veterans Act and the Civil Service Act in the creation and treatment of tenure is apparent. However, the Veterans Act is completely general in scope; it contains no specification of types or classes of public employment covered. On the other hand, the civil service acts for persons, holding State, county, municipal and board of education positions, offices or employment contain classes and specific types of public employment which should or should not be subject to tenure. In our view, therefore, provisions of civil service statutes adopted after the Veterans Act should, in certain situations, throw light on the question whether a position, office or employment was intended by the Legislature to have the benefit of tenure. This is particularly true when the governmental unit involved has adopted the Civil Service Act by referendum. In the present case, we take judicial notice of the fact that the Board of Education of Jersey City adopted the appropriate Civil Service Act in 1960. Thus, a person holding a position, office or employment with the Board (except for those covered exclusively by the various education acts in Title 18 of *N. J. S. A.*) would acquire tenure if he were within the classified service under the Civil Service Act. If, however, such a person were specifically excluded by the Act from the classified service

and therefore from tenure status, such fact must be regarded as providing insight and guidance in determining whether the person is one intended to have tenure under the blanket terms of the Veterans Act, *N. J. S. A.* 38:16–1.

The first Civil Service Act was adopted in 1908. It was made applicable to appointments to State employment or to employment by municipalities which adopted the Act. The basic philosophy expressed with regard to such appointments was that they were to be made according to merit and fitness, "to be ascertained, as far as practicable, by examinations, which as far as practicable shall be competitive." *L.* 1908, *c.* 156 § 1, *p.* 236. Two general classes of service were established and the manner of appointment thereto and the matter of tenure regulated. They were:

1. The unclassified service, appointment to which could be made without competitive examination. No tenure was conferred on this class. A list of specific types of offices, positions or employment to be in the class was set forth. § 11.

2. The classified service, to include all persons not included in the paid, unclassified service of the State or the municipalities which adopted the provisions of the Act. § 12. This service was divided into four sub-classes:

(a) The exempt class, to include certain specified positions, and others not listed (except laborers) for the filling of which competitive or non-competitive examinations were found by the Civil Service Commission to be impracticable. § 13; *City of Camden v. Civil Service Commission,* 129 *N. J. L.* 354, 358, affirmed, 130 *N. J. L.* 532 (*E. & A.* 1943).

(b) The competitive class, to include all positions for which it was practicable to determine the merit and fitness of applicants by competitive examinations. § 14.

(c) The non-competitive class, to include such positions as were not in the exempt class or labor class, and for which inclusion in the competitive class was considered impracticable by the Commission. Appointments to such positions

were to be made after such non-competitive examinations as would be prescribed by the rules of the Commission. § 15.

(d) The labor class for ordinary unskilled laborers. § 16. All persons in the classified service were granted tenure on appointment (after a probationary period) and could not be discharged except for cause and after notice and a hearing. § 24.

In adopting this Act, the Legislature obviously recognized the impracticability of holding competitive examinations for appointments as attorneys for municipalities. Section 11, *supra,* included in the unclassified service the Attorney General, as an officer appointed by the Governor, and

"all law officers of any municipality that may adopt the provisions of this act."

Thus such appointees were not eligible for tenure. In 1946, the subsection quoted, which had been incorporated into the Revised Statutes as R. S. 11:22–2, was amended and its coverage enlarged to include law officers of civil service counties and school districts. Thereafter, it provided, as it does now, that "law officers of a *county,* municipality or *school district"* operating under civil service shall be in the unclassified service. *N. J. S. A.* 11:22–2(e) (emphasis added). No case has been found which defined "law officers." It seems, however, that the reference is to the counsel, or chief counsel if more than one attorney has been appointed, of a civil service county, municipality or school district. That is the plain implication of *City of Camden v. Civil Service Commission, supra,* 129 *N. J. L.,* at *p.* 358.

The same conclusion must be drawn from Section 13 creating the exempt class. Subsection (2) thereof placed in the class

"The legal assistants of the law department of the State, and of the municipalities adopting the provisions of this act, and in the offices of prosecuting attorneys to the number actually engaged in trial or appeal work and appearing in the courts."

Thus "legal assistants" in such law departments could be appointed for an indefinite term, without competitive examination, and they would acquire tenure.

The exempt classification for such "legal assistants" was continued at the State and local level until 1948. Chapter 121, *L.* 1948, amended the Civil Service Act and among other things abolished the exempt class. The same chapter enlarged the classification for legal assistants of State departments and placed them in the *unclassified* service, as follows:

"h. Assistant Attorneys-General, legal assistants and special counsel to State departments by or with the authorization of the Attorney-General." *L.* 1948, *c.* 121,, § 1 (*h*), *p.* 833; *N. J. S. A.* 11:4–4(*h*).

The amendment also enlarged the existing classification for legal assistants in municipalities so as to make it relate to such assistants of a county or a school district as well. All of them were then assigned to the *unclassified service.* The new group so assigned are:

"k. The legal assistants of the law departments of the counties, municipalities or school districts operating under this subtitle except as herein otherwise provided." *L.* 1948, *c.* 121, § 5 (*k*), *p.* 836; *N. J. S. A.* 11:22–2(*k*). (This exception clause does not affect the problem in this case. It may be noted also that Jersey City is a school district. *N. J. S. A.* 18:5–1.1.)

By repealing the provisions of the 1908 Civil Service Act which had created the exempt class, and by enacting the amendments quoted assigning the various legal assistants to the unclassified service, the Legislature disqualified attorneys appointed to such posts thereafter from gaining tenure in law departments of counties, municipalities or school districts operating under civil service. How did this come about and what is its significance? First of all, the amendments are a continued recognition of a factor which impelled the Legislature originally to place in the exempt class attorneys for the State and local governmental units and agencies

described, *i. e.*, the belief that it was impracticable to conduct competitive examinations for such appointments. But a more important inference intrudes itself. Conscious of the exquisitely confidential relationship of attorney and client, the inference is strong that the lawmakers had decided that such attorneys should not have tenure and that a reasonable freedom of selection, so vital to the client, should be recognized.[1] Therefore, such attorneys were put in the unclassified category and they were prevented from achieving tenure.

Historically, there are other circumstances which point strongly to the legislative intention in promulgating the 1948 amendments to the Civil Service Act. In 1943 it had been held that an assistant city counsel, being in the exempt class of Civil Service, had tenure and could not be removed except for good cause and after notice and hearing. *City of Camden v. Civil Service Commission, supra.* In the same year the Court of Errors and Appeals affirmed a Supreme Court declaration that a legal assistant to a local board of education had tenure under *R. S.* 38:16–1 by reason of his veteran's status. *Fox v. Board of Education of Newark,* 129 *N. J. L.* 349, affirmed 130 *N. J. L.* 531 (*E. & A.* 1943). In 1947, the Civil Service Commission ordered reinstatement of an assistant corporation counsel of the City of Hoboken on the ground that his position was in the exempt class under the Civil Service Act and therefore he had tenure. Consequently, his summary removal was invalid. The Supreme Court and the Court of Errors and Appeals agreed. *Board of Com'rs of City of Hoboken v. Civil Service Commission,* 137 *N. J. L.* 72 (*Sup. Ct.* March 20, 1948), affirmed 137 *N. J. L.* 728 (*E. & A.,* argued May 28, decided

---

1. "It is clear, we think, that the relationship existing between the law officer of the municipality and the municipality itself is that of attorney and client. The law officer is the lawyer for the municipality. The municipality is his client. A confidential relationship exists between them." *A. B. A. Comm. on Professional Ethics, Opinions,* No. 95 (1933).

September 3, 1948). The Court of Errors and Appeals regarded the question at issue as settled by *City of Camden v. Civil Service Commission, supra.*

Chapter 121, *L.* 1948, *p.* 832, was introduced after the Civil Service Commission decision in the *Hoboken* case and about seven weeks prior to the Supreme Court decision. When introduced, the bill, in subsection *h,* excluded assistant attorneys-general, legal assistants and special counsel to State departments by or with the authorization of the attorney-general from the exempt category of the classified service where they had been since 1908. After going through three committee revisions, subsection *k, supra,* was added to the portion of the bill which amended *N. J. S. A.* 11:22–2. The addition excluded legal assistants of the law departments of counties, municipalities or school districts operating under civil service. Such assistants in municipalities which had adopted civil service also had been in the exempt class of the classified service since 1908. It should not escape attention that when subsection *k* was inserted, in the drafting process it was broadened so as to relate to counties and school districts as well as municipalities. Nor should it be overlooked that *Board of Com'rs, etc., of City of Hoboken v. Civil Service Commission, supra,* was in the courts at the time, and that a few years earlier *Fox v. Board of Education of Newark, supra,* had recognized tenure under the Veterans Act for a legal assistant to a board of education. The bill in its final form, incorporating subsections 1 (*h*) and (*k*) as quoted above, became law on June 12, 1948 as *L.* 1948, *c.* 121, *p.* 832. It is thus plain that the Legislature did not approve of tenure for "legal assistants" for the various governmental units described, and intended to eliminate it where civil service had been adopted.[2] Of course, the exclusion was to operate

---

2. The 1948 amendments authorized the Civil Service Commission to determine from time to time whether positions in the service of each political subdivision of the State "not assigned to the unclassified service of the civil service by law, shall be in the classified or un-

prospectively, and not to affect such counsel as had previously acquired tenure. See *Board of Chosen Freeholders of Hudson County v. Brenner,* 25 *N. J. Super.* 557 (*App. Div.* 1953), affirmed 14 *N. J.* 348 (1954); *L.* 1948, *c.* 121 §§ 9, 10, *p.* 838; *N. J. S. A.* 11:7–14.

What effect should be given to these tenure-exclusion amendments to the civil service statutes in cases where the attorney involved is a veteran? More particularly, what effect should be given to them in a school district which has adopted the appropriate Civil Service Act by referendum prior to the veteran-attorney's appointment? Since the defendant-Board of Education adopted civil service in 1960, the provisions of *N. J. S. A.* 11:22–2 *e* and *k* became binding at that time and attorneys who became its law officers or its "legal assistants" thereafter went into the unclassified service and could not acquire tenure. Subsections *e* and *k*

---

classified service * * * for purposes of appointment * * * and in so doing, the Civil Service Commission shall determine whether or not it is practicable to determine merit and fitness for employment * * * on the basis of * * . * competitive examination" or by other specified requirements. If not found practicable to determine merit and fitness in such manner, the position may be assigned to the unclassified service. *L.* 1948, *c.* 121 §§ 2, 3, 6 and 8; *N. J. S. A.* 11:22–50, –52.

In administering these sections the Commission was called upon recently to decide whether counsel to zoning boards of adjustment should be placed in the classified or unclassified service. It held that such an attorney should be in the unclassified service, saying:

"A Board of Adjustment must have complete confidence in the legal ability of its attorney, respect for his legal opinion, a feeling of personal relationship with him. Such demands a knowledge of basic qualities and attributes which can only come from close and extensive observations of an attorney or through having detailed knowledge of his reputation and his work. These characteristics are too intangible to be measured by a test.

In addition, the composition of the Board of Adjustment continually changes as terms expire and new members are appointed. The attorney representing the Board should reflect the changes in policies and procedures which would come about through such new appointments. This would be very difficult where the original policies and procedures have come through the recommendation of counsel.

are clear and specific in their terms. They make no exception for veterans.

■ Obviously when a board of education adopts civil service, subsections *e* and *k*, in barring the designated attorneys from tenure if they are appointed thereafter, are inconsistent with the earlier Veterans Tenure Act, *N. J. S. A.* 38:16–1. The Veterans Act is in broad general language and speaks in terms of any employment, position or office. Aside from the common sense doctrine that the specific usually controls the general, *Ackley v. Norcross, supra,* 122 *N. J. L.,* at *p.* 572, as we have said earlier, a general grant cannot be applied in a given case in the face of later specific statutes which reveal a legislative purpose to deny or to exclude an appointee from the tenure benefit of *N. J. S. A.* 38:16–1. *Brennan v. Byrne, supra,* 31 *N. J.* 333 (1960);

Thus, in summary, the confidential nature of the lawyer-client relationship of an attorney to the Board of Adjustment in his advising and consulting with the Board is such that it requires qualities and characteristics which it is impracticable to test for by the Department of Civil Service." Decision of the Civil Service Commission after Public Hearing on July 25, 1967, at the State House, Trenton, New Jersey to Determine Whether the Position of Attorney, Board of Adjustment Shall be Placed in the Classified or Unclassified Service of the Civil Service. (Dated September 29, 1967).

This ruling accords with the general principle stated in 4 *McQuillin, Municipal Corporations* (3d ed. 1949) § 12.248 *pp.* 287–89.

"As has previously been seen * * * veterans' preference acts usually cover subordinate positions only, and as a rule have no application * * * to those holding confidential positions."

There are other indications that the New Jersey Legislature is opposed to giving tenure under *N. J. S. A.* 38:16–1 on appointment without term to confidential positions. In *Kessler v. Minard,* 134 *N. J. L.* 583 (*Sup. Ct.* 1946) a legal assistant to a prosecutor of a county of the first class was held to have tenure because of his veteran's status. A few years later a statute was enacted applying only to counties of the first class and authorizing appointment of a limited number of legal assistants to the prosecutor. It provided, however, that such assistants shall be in the unclassified category of the civil service. Our Court held that this statute barred tenure under the Veterans Act, even though there was no such amendment to that Act. *Cetrulo v. Byrne,* 31 *N. J.* 320, 330 (1960). See also *Brennan v. Byrne, supra; Goboc v. Davis,* 62 *N. J. Super.* 148 (*Law Div.* 1960); *Rotherham v. Grece,* 14 *N. J. Misc.* 164 (*Sup. Ct.* 1936).

*Cetrulo v. Byrne, supra,* 31 *N. J.* 320 (1960). Here the people of Jersey City adopted civil service for the school district personnel (except for those employees, teachers etc. who receive tenure under specific provisions of Title 18, Education). In doing so they brought into control all pertinent provisions of the civil service laws, including the specific provisions placing law officers and "legal assistants" for the Board in the unclassified service. The obvious conflict between subsections *e* and *k* of *N. J. S. A.* 11:22–2 of the Civil Service Act and the earlier veterans statute, in our judgment, can be resolved properly in but one way: recognition of subsections *e* and *k* as controlling and as excluding veterans' tenure. In such a situation, and particularly in light of the history of the adoption of subsections *e* and *k* by the Legislature, the Veterans Act must give way. *Cf. Andreano v. Gunter,* 252 *Iowa* 1330, 110 *N. W. 2d* 649 (1961).

In dealing with an apparent conflict between the Civil Service Veterans Tenure Acts in a somewhat different though pertinent context, the Court said in *Giannone v. Carlin,* 20 *N. J.* 511, 519 (1956):

> "While we agree the Veterans' Tenure Act is a statute *in pari-materia,* we must state it was not intended to supersede the Civil Service Act *pro tanto.* That would mean that a veteran appointed even temporarily to an office or position within the classified service would automatically have tenure. This cannot be so, and *a fortiori* it cannot be so of a temporary position."

■■ This brings us to a further question. Should the Chief Administrative Counsel of the Board be deemed within the subsection *e* exclusion of "law officers," or the subsection *k* exclusion of "the legal assistants of the law department of" the school district? The Chief Administrative Counsel probably does not qualify as a "head of department" within the meaning of *N. J. S. A.* 11:22–2(*d*) of the Civil Service Act. *Connors v. City of Bayonne,* 36 *N. J. Super.* 390 (*App.*

*Div.*), certification denied, 19 *N. J.* 362 (1955); *Chapman v. Edwards,* 124 *N. J. L.* 192 (*Sup. Ct.* 1940). He can neither appoint, discharge nor fix the salaries of the Counsel or Assistant Counsel or of any other employee. His own duties, as well as those of the other attorneys, are fixed by the Board in the resolutions of appointment. If Perrella were deemed to be head of a department, he would be in the unclassified service under *N. J. S. A.* 11:22-2 (*d*) and therefore excluded from tenure. But assuming, without deciding, that the Board intended to make Perrella head of the Law Department, without intending to qualify him as head of a department within the contemplation of subsection *d* of *N. J. S. A.* 11:22-2 of the Civil Service Act, the fact remains that he was the Chief Counsel to the Board and charged with supervision of the Counsel and Assistant Counsel with respect to the duties assigned to them by the appointing resolution. It seems plain that he was a "law officer" of the school district, within subsection *e,* and therefore in the unclassified service of the civil service. As we have already said, the apparent inconsistency between the Veterans' Tenure Act and subsection *e* of *N. J. S. A.* 11:22-2 of the Civil Service Act with respect to tenure must be resolved in favor of the latter statute.

Subsection *k* completes the legislative demonstration that attorneys for local governmental units or agencies are not intended to have tenure. Even if the descriptive term "law officers" in subsection *e* by some strained reasoning could be construed not to include Perrella's position, his situation would be no different. If he is not a "law officer," *i. e.* Chief Attorney of the Board's Law Department, then he must occupy the status of a legal assistant "of the law department of * * * of the school district." Obviously subsections *e* and *k* are intended to include all attorneys for a school board whatever their title. Members of the bar who are appointed to represent State and local governmental units or agencies receive a variety of designations: "counsel to,"

"attorneys for," "assistant counsel," "deputy attorney," etc. See, *e. g. Rowe v. Board of Chosen Freeholders of Hudson County,* 61 *N. J. L.* 120 (*Sup. Ct.* 1897). But when they are appointed on an indefinite basis, in our view, whatever the title, they are either "law officers" or "legal assistants" of the school district. Describing the area in which they work in the organizational structure of the school district as "the law department" does not add a single cubit to their status. For example, in this instance one attorney-appointee was designated "Counsel" to the Board. The title might well give the impression that he was the chief or sole attorney for the Board. Yet the fact is that he is subordinate to Perrella, the Chief Administrative Counsel, and so a "legal assistant" of the Law Department. The memorandum decision of the Civil Service Commission, referred to in footnote 2 hereof, reflects a similar view. In the exercise of its expertise, it declared that a person appointed "attorney" for a zoning board of adjustment should not be considered in the classified civil service, largely because of the confidential nature of the attorney-client relationship. Undoubtedly the opinion would have been the same if the proposed attorney's title was to be "Counsel" or "Chief Administrative Counsel."

The evolution of subsections *e* and *k* satisfies us that in deciding the issue of tenure in cases such as this one, the result cannot turn alone on the title of the position in question in the Law Department of a board of education. Study of the history and development of the Civil Service Act satisfies us that the Legislature intended that upon adoption of the Civil Service Act a board of education should be free from the tenure restraint of the earlier Veterans' Act, and should have the power to discharge subsequently appointed law officers or legal assistants of its Law Department without cause, notice or a hearing.

Under the circumstances here we conclude that plaintiff did not have tenure in his position as Chief Administrative Counsel to defendant-Board of Education. His

employment, therefore, was at will and he was subject to summary removal. Accordingly, his discharge was valid and he has no claim for lost salary for the period in question.

Our holding eliminates any need for deciding whether plaintiff's position was abolished for political reasons or for reasons of economy. Consequently, as we said earlier, we shall not review the factual determination in the trial court that Perrella's removal was politically motivated. Further, since plaintiff, as a non-tenure employee, was not removed illegally and, therefore, has no claim for lost salary, it is not necessary to pass upon whether or to what extent the doctrine of mitigation of damages should have been applied under *Mastrobattista v. Essex County Park Comm'n,* 46 *N. J.* 138 (1965) and *Mason v. Civil Service Comm'n,* 51 *N. J.* 115, decided February 5, 1968.

It is necessary for future guidance, however, to comment on the action of the trial court in allowing a counsel fee to plaintiff. Of course, in view of our holding that plaintiff has no right to a back-pay award, it follows that the allowance of counsel fee must fall also. But the fee grant has another aspect of legal error, stemming apparently from a misconception of our decision in *Mastrobattista.*

The trial judge recognized that plaintiff's employment with the Board was part time, and that it did not interfere with his private law practice. He held that Perrella was entitled to recover the full amount of back pay lost from the date of discharge, July 8, 1964, to September 20, 1965 when the Board adopted the resolution (later approved by the Appellate Division) abolishing its Law Department. He held also that this full amount of back pay was not subject to mitigation as the result of any earnings from plaintiff's private practice of law during the period in question. Then, believing that *Mastrobattista* sanctioned it, the trial court allowed a counsel fee of $3,000 to plaintiff. Thus plaintiff was given a full recovery of salary lost, undiminished by any

portion of his law practice earnings, and in addition was granted the $3,000 counsel fee.

In *Mastrobattista* it was held that when a public employee with tenure was improperly dismissed, he was entitled to recover his lost back pay less his earnings in outside employment between the date of dismissal and date of restoration to his position. We recognized, however, that such an employee might well have been obliged to incur expenses and attorney's fees in order to vindicate his right to the position. In this event, whenever his back-pay award was to be mitigated by his outside earnings, it seemed just and equitable to give him a credit against the sum to be applied in mitigation of the reasonable counsel fee and expenses which he had paid or obligated himself to pay in the successful prosecution of his action. Thus his interim outside earnings less such fee and expenses would represent the factor to be applied in diminution of his back-pay recovery. This is the purport of *Mastrobattista,* as well as of *Mason v. Civil Service Comm'n, supra.*

It was not the purpose of *Mastrobattista* and *Mason* to provide a profit for such public employees when they are reinstated. The motive was to see that they do not suffer any loss in earnings. See *Mastrobattista,* 46 *N. J.,* at *p.* 150. It was not our intention to put such employees in a better position than an ordinary litigant who makes a full recovery of damages in simple breach of contract cases; nor did we intend to depart from the view that "sound judicial administration will best be advanced by having each litigant bear his own counsel fee except in those few situations specially designated in *R. R.* 4:55–7." *Gerhardt v. Continental Ins. Co.,* 48 *N. J.* 291, 301 (1966). Therefore, when a tenure-holding public employee is improperly discharged and is awarded *back wages in full without mitigation,* either by the Civil Service Commission or by a court, neither *Mastrobattista* nor *Mason* provides any justification for adding a counsel fee to such full recovery.

For the reasons outlined, the judgments of the Appellate Division and the trial court are reversed, and the matter is remanded for entry of judgment for defendant.

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance* — None.