187 N.J. Super. 546 (1983)
455 A.2d 552
ROBERT W. TAYLOR, PLAINTIFF-APPELLANT,
v.
BOARD OF EDUCATION FOR THE SCHOOL DISTRICT OF THE CITY OF HOBOKEN, COUNTY OF HUDSON, NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 15, 1982.
Decided January 18, 1983.
*547 Before Judges ARD, KING and McELROY.
Brownstein, Gold, Booth & Barry, attorneys for appellant (Alexander W. Booth Jr., on the brief).
*548 Albert J. Hordes, attorney for respondent.
The opinion of the court was delivered by McELROY, J.A.D.
Appellant Taylor, an attorney-at-law of this State and a veteran, appeals from a decision of the Law Division holding that he was not entitled to veteran's tenure when dismissed as attorney to respondent board of education (board). See N.J.S.A. 38:16-1. The action was started by a complaint in lieu of prerogative writs in which plaintiff contended he had been dismissed, without a hearing and demonstration of good cause, from his position as attorney (first count) and from a position he also held with the board in "a responsible administrative capacity" (second count). That position was not otherwise defined in the complaint. The Law Division judge did not deal with the issues raised by the second count and we will treat that count later in this opinion. With respect to the claim of veteran's tenure grounded in Taylor's role as attorney to the board, Judge Dowden rendered a comprehensive oral opinion essentially holding that DR 2-110(B)(4) governed the issue; that Taylor as attorney to the board was mandatorily required by that disciplinary rule to withdraw from his position when his client no longer wished him to serve as its counsel, and in such circumstances the provisions of N.J.S.A. 38:16-1 were inapplicable to Taylor's tenure claim. We affirm Judge Dowden's able opinion on that issue substantially for the reasons he gave and add the following.
The trial judge made no specific findings of fact, deeming the issue presented as purely legal in nature. In the exercise of our right to do so, we have examined the record presented and make the following factual findings. R. 2:10-5.[1]
*549 Taylor was appointed attorney to the board by a resolution effective May 16, 1966 at an initial annual salary of $6,500 payable, as were the salaries of all board employees, in semimonthly installments. There was no fixed term of employment stated in the resolution. Respondent regularly withheld monies for federal and state taxes, Social Security, pension fund contributions and "other key deductions," the latter not otherwise explained. Taylor apparently enjoyed certain "fringe benefits" not delineated by the testimony below except to designate such benefits as those that were "the same as every employee," with the exception, perhaps, of a newly-added dental plan adopted immediately prior to his discharge.
Taylor was admitted to the bars of New York and New Jersey. During the time in question he maintained a law office at 160 Broadway in the City of New York where he had a suite of two rooms and employed a secretary. There is no testimony as to whether he also maintained a law office in New Jersey. He was a certified accountant of New Jersey and New York. He practiced that profession and the law in both states for other clients, in addition to his work for the Board. His accounting firm was styled as Robert W. Taylor and Company and he was a principal of that organization. There is no indication as to where the firm was located. Taylor was supplied with board stationery which designated him as counsel.
When first hired in 1966, and until 1973 or 1974, Taylor acted solely as counsel for the board until its former accountant *550 resigned. Taylor then performed professional accounting services, but we find that this work was done sporadically and for separate fees.
In 1975 Taylor was given what he termed "administrative" duties in addition to his regular legal work. These functions indeed were of an administrative nature but no new position was created for him and no additional job title was granted. The tasks were "merely assigned to [him] ... and [he] agreed to undertake them." He admitted that such duties "became part of my regular job." The board passed no resolution creating any additional position for appellant and there was no approval given for any additional title, position or office by the county superintendent of schools.[2] Taylor was given additional salary with these added duties, but no separate pay check was given to him in addition to those made out to him as attorney.
Taylor testified, and we find as a fact, that he did some work for the board in connection with school bonds for new school construction. We find, as he testified, that to the extent he did legal work in this connection it was part of his usual duties for which he was paid his regular salary, and any separately connected billing was merely to obtain reimbursement of expenses. The major part of the legal work for the bond issue was done by independent bond counsel. Appellant stated, and we find as a *551 fact, that whatever additional tasks he performed relative to the bonds were professional accounting work for which he separately billed the board as an accountant on a professional fee basis.
Appellant also testified, and we find no evidence or reasonable inferences to the contrary, that all legal work performed for the board during his 13 years with that body was paid for by way of salary and was not billed to the board, or paid for, on any legal fee basis. Taylor worked an average of 1,000 hours a year for the Board and spent about 600 of those hours on purely legal work and about 400 hours on the additional general tasks assigned to him. He had no regular daily hours nor were any expected of him. He, by agreement or understanding, was expected to do whatever work arose that fit within his duties. All of his work was of a continuous nature, performed for a salary with the usual withholding and deductions, and required almost daily attendance.
In April 1979 appellant and the board had a dispute as to the amount of money he was to receive by way of annual salary increase. Taylor insisted upon a 7% increment and the board offered an increase slightly in excess of 4%. As a result, the board passed a resolution terminating "the service of its legal counsel, Robert W. Taylor, effective May 16, 1979."
On or about July 9, 1979 Taylor filed a petition with the Commissioner of Education claiming veteran's tenure as school board attorney under N.J.S.A. 38:16-1 (first count) and employment tenure "as school business administrator" pursuant to N.J.S.A. 18A:17-2 and N.J.S.A. 18A:6-9 et seq. (second count). A third count, not relevant to any issue here raised, was also pleaded.
The matter was assigned to Administrative Law Judge Springer who, after a hearing, rendered an initial decision on March 17, 1981 holding he had no jurisdiction to determine the question of veteran's tenure. Fox v. Newark Bd. of Ed., 129 N.J.L. 349 (Sup.Ct. 1943), aff'd o.b. 130 N.J. 531 (E. & A. 1943). With respect to employment in a role appellant termed "school *552 business administrator,"[3] Judge Springer held, as noted, that Taylor's claim to employment tenure had no merit. In addition to that mentioned in footnote 2, supra, the judge found that Taylor never acquired a certificate as a school business administrator, as required by N.J.S.A. 18A:17-14.2 and N.J.A.C. 6:3-1.18(a)(4), and thus could not, and did not, act de jure or de facto as such administrator.[4]
On April 16, 1981 Taylor filed his present complaint in lieu of prerogative writs. The matter was heard by Judge Dowden on September 25, 1981 and was decided October 1, 1981.[5]

I
N.J.S.A. 38:16-1, in pertinent part, provides:
No person now holding any employment, position or office under the government of this State, or the government of any county or municipality, including any person employed by a school board or board of education, or who may hereafter be appointed to any such employment, office or position, whose term of employment, office or position is not now fixed by law, and receiving a salary from such State, county or municipality, including any person employed by a school board or board of education, who has served as a soldier, sailor, marine or nurse, in any war of the United States, or in the New Jersey State militia during the period of the World War, and has been honorably discharged from the service of the United States or from such militia, prior to or during such employment in or occupancy of such position or office, shall be removed from *553 such employment, position or office, except for good cause shown after a fair and impartial hearing, but such person shall hold his employment, position or office during good behavior, and shall not be removed for political reasons.
DR 2-110(B)(4) is unequivocal as to an attorney's duty to withdraw from employment when his client discharges him. It provides in pertinent part:
(B) Mandatory withdrawal.
A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
........
(4) He is discharged by his client.
R. 1:14 makes the above rule applicable to Taylor and all other members of the bar of this State:
The Disciplinary Rules of the Code of Professional Responsibility and the Code of Judicial Conduct of the American Bar Association, as amended and supplemented by the Supreme Court and included as an Appendix to Part I of these rules, shall govern the conduct of the members of the bar and the judges of all courts of this State.
Our Supreme Court has the exclusive constitutional responsibility as to admission to the bar, the practice of law, the conduct of attorneys and the attorney-client relationship. N.J. Const. Art. VI § II, par. 3 (1947); American Trial Lawyers v. N.J. Supreme Court, 66 N.J. 258 (1974); State v. Rush, 46 N.J. 399 (1966). Even before our present constitution was enacted in 1947, the inherent power of the judiciary to regulate the bar was recognized in a case where a statute attempting to set qualifications for admission to the bar was held void. In re Branch, 70 N.J.L. 537 (Sup.Ct. 1904). This view was reinforced by our present Supreme Court in New Jersey Bar Ass'n v. Northern N.J. Mtg. Assocs., 32 N.J. 430, 446 (1960), where the court emphatically declared that "the Legislature may not constitutionally authorize the practice of law by anyone not duly admitted to the bar by this court."
N.J.S.A. 38:16-1 is a general statute and in a universal manner makes itself applicable for tenure purposes to any honorably discharged veteran "holding any employment, position *554 or office under ... the government of any ... municipality, including any person employed by a school board or board of education ... whose term ... is not now fixed by law, and receiving a salary from such ... school board or board of education...." Appellant is such a veteran; he held employment or a position for no fixed term under a municipal government's school board and received a salary from that board. His services were terminated without a fair and impartial hearing demonstrating good cause, and he asserts that N.J.S.A. 38:16-1, despite the clear language of DR 2-110(B)(4), requires a holding of veteran's tenure. The issue of conflict between statute and court rule is squarely presented by these facts and the question raised by this case.
We are mindful of the principle that a declaration holding an act of the Legislature even partially unconstitutional (here only as it applies to members of the bar) is a sensitive ruling not to be undertaken unless there be no possible accomodation between the force of the statute and the conflicting rule. Cf. Ahto v. Weaver, 39 N.J. 418, 428 (1963). Nevertheless, there does come a time when that disagreeable judicial venture arises. See, e.g., New Jersey Bar Ass'n v. Northern N.J. Mtg. Assocs., supra, 32 N.J. at 446-447; Winberry v. Salisbury, 5 N.J. 240 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950); In re Branch, supra.
Our research discloses no case in this State dealing directly with the issue of conflict between N.J.S.A. 38:16-1 and DR 2-110(B)(4). The only case we have found interpreting the disciplinary rule in relation to a statute is Pillsbury v. Monmouth Cty. Freeholder Bd., 133 N.J. Super. 526 (Law Div. 1975), aff'd 140 N.J. Super. 410 (App.Div. 1976). That case presented an issue of contention between DR 2-110(B)(4) and N.J.S.A. 40A:9-43, a statute setting the appointive term of county counsel at three years. The freeholders sought to discharge the county counsel before the expiration of his statutory term and urged *555 DR 2-110(B)(4) as supplying that right. They contended that the principles of Winberry v. Salisbury, supra, required the statute be struck down. The trial judge held that DR 2-110(B)(4) "did not indicate nor can it be assumed that it contemplated a situation such as is before me," and determined that the office of county counsel involves public legal representation as distinguished from the confidential nature of a private attorney-client relationship. 133 N.J. Super. at 534-535. The Appellate Division affirmed, but met the issue by holding that the office of county counsel is a public office, a creature of the Legislature, and that body has the constitutional right to "determine the duties and the interrelation among the offices it establishes." The court held that "[w]ithin the constitutional framework the Legislature is the architect of the structure of government." It also noted, in supporting the constitutional validity of the statute over the disciplinary rule, that county counsel "is not only involved in the practice of law, but also, because of his status as a public officer, has the duty of carrying on the operations of government." 140 N.J. Super. at 413-414. Thus, in the particular circumstances of that case, the Legislature's constitutional prerogative prevailed. The case is clearly distinguishable from the one at hand.
Taylor's appointment as counsel by the board has its origin in N.J.S.A. 18A:16-1, which empowers the board to employ "other officers and employees, as it shall determine...." Fox v. Newark Bd. of Ed., 129 N.J.L. 349, 352 (Sup.Ct. 1943), aff'd o.b. 130 N.J.L. 531 (E. & A. 1943); Gill v. Hamilton Tp. Bd. of Ed., 44 N.J. Super. 79, 81 (App.Div. 1957). Both of these cases dealt with the question of the right to veteran's tenure of a school board attorney and granted tenure under N.J.S.A. 38:16-1. Neither case, however, approached the issue from the standpoint of the client's inherent right to discharge its legal counsel and the attorney's corresponding obligation to withdraw from representation *556 in such event.[6] The issue was not raised in Fox. In Gill this court noted that it gave no consideration to other points "otherwise bearing upon the question [of tenure] since no other contention is urged by [the board] on this appeal." Id. at 84.
Both cases, however, are apposite to the present matter in that both hold, in contexts similar to that here presented, that an attorney for a school board who is a veteran appointed without a fixed term, is a person holding "employment" or a "position" within the meaning of N.J.S.A. 38:16-1. Fox, a Court of Errors and Appeals decision, specifically presented a case where the attorney was "receiving a salary from such ... board of education" within the meaning of the tenure act.
In Koribanics v. Clifton Bd. of Ed., 48 N.J. 1 (1966), the Supreme Court dealt with a resolution of a board of education that appointed plaintiff, a veteran, as its attorney at a set annual salary, "to serve without term." The resolution specifically stated it was the board's intention "to grant tenure... in accordance with the provisions of ... N.J.S.A. 38:16-1 et seq." Id. at 3. After 5 1/2 years Koribanics was discharged without the hearing required by N.J.S.A. 38:16-1. The facts, however, demonstrated that Koribanics, during his term of service, was paid $30,801.39, of which $20,707.14 was salary and $10,094.25 represented fees for extra work. The court held that because of his extra fees Koribanics could not be said to have received a salary for an office, position or employment, as required by the tenure statute. It distinguished Fox, supra, as a case where (as here) the attorney "operated under a straight periodic $7,000 per annum salary." Id. at 8. The decision noted that because of its disposition of the matter on the salary question it "need not *557 decide the defendant's contentions respecting the impact of the Canons of Ethics and the attorney-client relationship upon the problem." Ibid.
We pointed out in footnote 6, supra, that DR 2-110(B)(4) and its mandatory directive that an attorney, upon dismissal by his client, "shall withdraw from employment" was adopted by court rule in 1971. Although the prior Canons were not specific as to the attorney's duty in such circumstances, our Supreme Court, before its adoption of DR 2-110(B)(4), without directly applying the principle did speak in terms of the ancient right of a client to choose and dismiss his attorney. In Parella v. Jersey City Bd. of Ed., 51 N.J. 323 (1968), a case decided on grounds other than the attorney-client relationship, Justice Francis observed:
There is no statute which says expressly that an attorney or counsel for a local board of education shall not have veteran's tenure. There are paths of legislative making, however, which plainly reveal such an intention. Before setting out on these paths, it is necessary to call to mind the peculiar relationship which a member of the bar has as counsel to a public body. It is a position of trust and confidence. It is born in the confidence of the public body, rarely of permanent status, has in the ability, honesty and personality of the individual selected. In common sense the relationship is simply that of attorney and client, basic to which, from time immemorial, has been the desirability of personal selection of the attorney by the client. [at 331]
Parella concerned a claim by a discharged counsel to a board of education for salary allegedly owed from the date of his discharge to the date when the board legally abolished the law department he had headed. He founded his right upon his veteran status under N.J.S.A. 38:16-1. The decision illustrates the type of approach the court took to deny veteran's tenure to a government attorney prior to the adoption of DR 2:110(B)(4). Recognizing that N.J.S.A. 38:16-1 is general in its terms and clearly universal in its intent to cover all veterans, the court looked for statutory exceptions to the Veteran's Tenure Act. Thus, Justice Francis observed:
Veterans preference and tenure statutes have had a long existence in New Jersey. L. 1888, c. 104, p. 135; L. 1895, c. 155, p. 317, Gen.Stat. 3702; L. 1907, c. 14, p. 37; Comp.Stat. 4873. They are acts of general application to public employment. But it is well settled that such statutes, including the current one, N.J.S.A. 38:16-1, quoted above, are not applicable to an employment, position or *558 office in the service of the State, county, municipality or board of education if later specific enactments adequately indicate a legislative intent to exclude it from tenure protection. Koribanics v. Board of Education of City of Clifton, 48 N.J. 1, 5 (1966); Brennan v. Byrne, 31 N.J. 333, 337 (1960); Barringer v. Miele, 6 N.J. 139 (1951); Ackley v. Norcross, 122 N.J.L. 569, 572 (Sup.Ct. 1939); Smith v. City Council of City of Hackensack, 70 N.J. Super. 209 (App.Div. 1961), certification denied 36 N.J. 300 (1962). [at 330-331]
In Parella, a case where the board of education was subject to the Civil Service Act, the court denied veteran's tenure to the attorney because under N.J.S.A. 11:22-2(e) and (k) of that act he was held to be a person in the unclassified service excluded from veteran's tenure by those sections. Thus, the general grant of veteran's tenure of N.J.S.A. 38:16-1 was deemed to be controlled by the later specific legislative exclusion of the Civil Service laws. Id. at 331-343.
The approach taken in Parella and in the cases cited in the above quotation is not applicable here. The respondent in the administrative hearing before Judge Springer stipulated that it is not subject to the Civil Service Act, and respondent does not contend otherwise here. Parella recognizes that there "is no statute which says expressly that an attorney or counsel for a local board of education shall not have veteran's tenure." Id. at 331. The Civil Service enactments do not apply to this case, nor is there a statute dealing with the appointment of school board counsel expressly stating that such attorney serves at the pleasure of the board. See, e.g., Cetrulo v. Byrne, 31 N.J. 320, 330 (1960); Brennan v. Byrne, 31 N.J. 333, 337-338 (1960); Barringer v. Miele, 6 N.J. 139, 143 (1951).
Fox v. Newark Bd. of Ed., supra, a case controlling this court, clearly regards an individual in Taylor's position as legislatively intended to be covered by veteran's tenure. Gill v. Hamilton Tp. Bd. of Ed., Parella v. Jersey City Bd. of Ed., and Koribanics v. Clifton Bd. of Ed. equally appear to recognize the application of the general terms of N.J.S.A. 38:16-1 to a veteran who is a salaried school board attorney appointed for no fixed term. *559 Taylor is of that class.[7] Accordingly, if he is to be denied tenure it must be because he, as a member of the bar, is governed by DR 2-110(B)(4) and cannot seek tenure because, under that rule, he serves at the pleasure of his client.
In our view it would be gross judicial eccentricity to acknowledge the disciplinary rule, the constitutional power of the Supreme Court to enact it and yet hold that the legislative grant of tenure controls. The disciplinary rule and N.J.S.A. 38:16-1 are in direct conflict. Likewise, it is clear that the Supreme Court is the exclusive constitutional repository of the responsibility for regulating the attorney-client relationship. American Trial Lawyers v. N.J. Supreme Court, supra. Although *560 we are aware of our duty to avoid constitutional conflict, we are obliged to meet the issue. In so doing, we heed the statements of former Chief Justice Hughes in American Trial Lawyers, supra, expressing the constitutional duty of his court and our judicial obligation.
One source of the power of the Court to regulate practice and procedure therein, of course, is its traditional, inherent and integral relationship to the very existence and the functioning of the court. But so precisely and unmistakably (as held below) did Article VI, § II, par. 3 of the Constitution, supra, make `the Supreme Court the exclusive repository of the State's power to regulate the practice of the law, investing it "with exclusive responsibility, in this area" State v. Rush, 46 N.J. 399, 411 (1966),' American Trial Lawyers Ass'n v. New Jersey Supreme Court, supra, 126 N.J. Super. [577] at 585 that the existence and exclusivity of the power would seem quite beyond question.
........
The people's constitutional reposition of power always carries with it a mandate for the full and responsible use of that power. When the organic law reposes legislative power in that branch, for instance, it is expected that such power will be used, lest it wither and leave the vacuum of a constitutional exigency requiring another branch (however reluctantly) to exercise, or project the exercise of, that unused power for the necessary vindication of the constitutional rights of the people. Robinson v. Cahill, 62 N.J. 473 (1973), cert. den. sub nom. Dickey v. Robinson, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219; Jackman v. Bodine, 43 N.J. 453 (1964); Asbury Park Press, Inc. v. Woolley, 33 N.J. 1 (1960). So it is with the unparalleled executive authority vested by the 1947 Constitution.
And so it has been with the judicial branch of this government. Since 1948 (the Judicial Article became effective September 15, 1948, Article IX, § IV, par. 14) the Supreme Court has not hesitated to meet its responsibility for the use of the judicial and administrative power reposed in it by Article VI. Thus, it has `legislatively' adopted Rules of general application regulating the professional conduct of attorneys and their relationships to their clients and to the courts.
........
In this grant of power and reposing of responsibility the people of New Jersey trusted and commissioned the Supreme Court, in effect, to `keep the house of the law in order.' See, Gair v. Peck, 6 N.Y.2d 97, 111, 188 N.Y.S.2d 491, 502, 160 N.E.2d 43, 51 (1959), appeal dismissed 361 U.S. 374, 80 S.Ct. 401, 4 L.Ed.2d 380 (1960). The Court intends to fulfill that responsibility and to fulfill it within the framework of constitutional right. To do less would degrade the Court, weaken the profession and impede the administration of justice, eventualities against *561 which we believe the profession, as well as this Court, to be fully dedicated. [66 N.J. at 262-265].
Accordingly, we hold that N.J.S.A. 38:16-1 does not govern the attorney-client relationship. To the extent it so intends, it must give way to DR 2-110(B)(4).

II
We have already observed that appellant in his petition to the Commissioner of Education described his alleged additional position with the board as "school business administrator," and in his present complaint he asserts his role was one "served in a responsible administrative capacity in addition to serving as Board Attorney." Judge Springer found that Taylor did not hold a position as school business administrator in either de jure or de facto fashion, and we agree. We are, moreover, convinced that Taylor, under the facts, was not appointed to any position in addition to his role as attorney. He admitted that additional tasks were assigned to him and he agreed to undertake them and that such duties "became part of [his] regular job."
It is apparent that no separate office was created. Taylor merely performed additional duties and was paid with a single check for all of his work. In the exercise of their functions lawyers frequently render services to clients beyond the strict limits of their professional franchise. Taylor was engaged initially as an attorney. That he thereafter "stepped beyond the strictly legal role to undertake to render services which a non-lawyer could render, would not justify the conclusion that he was engaged other than as a lawyer." Ellenstein v. Herman Body Co., 23 N.J. 348, 352 (1957). We conclude that in this case appellant has failed to sustain his burden of proof that a separate administrative employment or position was created for which he received a separate salary. N.J.S.A. 38:16-1 is, therefore, inapplicable and judgment is entered in favor of respondent denying appellant the relief he sought in the second count of his complaint.

*562 CONCLUSION
The judgment of the Law Division in favor of the respondent board of education for the School District of Hoboken on the first count of appellant's complaint is affirmed. Judgment is entered in this court in favor of respondent and against appellant on the second count of the complaint.
NOTES
[1] We are presented with a record consisting of a portion of Taylor's testimony before an administrative law judge given in support of a petition filed with the Commissioner of Education; the administrative judge's initial decision; testimony of two witnesses called by respondent at the Law Division hearing; Judge Dowden's decision; the pleadings filed with the Commissioner and those filed with the Law Division, and two exhibits apparently placed in evidence before Judge Dowden. These two exhibits are in respondent's appendix. The record of the brief hearing before the Law Division indicates that only these two exhibits were placed in evidence and two witnesses for respondent were heard. There was brief oral argument. Appellant's procedural statement indicates that a transcript of his testimony at the administrative hearing was presented to Judge Dowden. We assume it is the one supplied to us.
[2] The initial decision of the administrative law judge furnished to us in appellant's appendix reveals that on these same facts the judge found appellant's claim that he was a school business administrator, entitled to employment tenure under N.J.S.A. 18A:17-2 and N.J.S.A. 18A:6-9 et seq., was without merit. The judge, among other reasons, held:

It cannot be reasonably argued that Taylor was properly appointed to the job of school business administrator. In the first place, the Board failed to apply to the County Superintendent of Schools for certification of the necessity of such position, as required by N.J.S.A. 18A:17-14.1 and N.J.A.C. 6:3-1.18(a)(1) and (3). Secondly, the Board never passed any resolution by majority vote of all members to appoint Taylor to that post, as required by N.J.S.A. 18A:17-14.1. Indeed, the testimony strongly indicates that the Board never really intended to create such job category at all.
[3] It is to be noted that appellant, having failed at this designation for his position in the administrative hearing styled his role as one "served in a responsible administrative capacity in addition to service as Board Attorney," when he filed his Law Division complaint seeking veteran's tenure.
[4] Appellant's procedural statement does not tell us whether any appeal was taken from the adverse result before the Commissioner nor, for that matter, does he advise us whether the Commissioner affirmed, modified, rejected or failed to act upon Judge Springer's initial decision within the 45 days provided by N.J.S.A. 52:14B-10. We may fairly assume such affirmance or appellant would not have filed his Law Division complaint.
[5] This complaint, filed about two years after Taylor was terminated by the board, was held to have been timely filed by Judge Dowden, perhaps by reason of R. 4:69-6(c). Respondent argues this was error but furnished no transcript of the trial judge's decision and filed no cross-appeal. We do not, therefore, consider any such argument.
[6] DR 2:110(B)(4) and the disciplinary rules were by R. 1:14 adopted by the Supreme Court, effective September 13, 1971. The Canons of Professional Ethics, made applicable to our bar by former R.R. 1:25, were at that time deleted. The Canons were not as stringent and had no mandatory provision similar to the DR 2-110(B)(4) requirement that an attorney "shall withdraw from employment" if "[h]e is discharged by his client."
[7] Respondent does not contend that Taylor, because he is an attorney, is an independent contractor and thus beyond any intent of the Legislature in granting tenure by N.J.S.A. 38:16-1. The facts of this case, and the prior decisions referred to above, do not, in our view, furnish grounds for such an approach. Neither does N.J.S.A. 38:16-1 which, in a broad stroke, only lists three qualifications for tenure: (1) veteran status; (2) employment, position or office, without a fixed term with a school board, and (3) receipt of a salary. The Supreme Court, in an other context, has held that an attorney to a public body is not an independent contractor. Reilly v. Ozzard, 33 N.J. 529 (1960). In that case former Chief Justice Weintraub stated:

It is argued that from the nature of his profession an attorney can be only an independent contractor. Reliance is placed upon Ewart v. Commissioner, 98 F.2d 649 (3 Cir.1938). The court held that upon the record before it the attorney there served the municipalities as an independent contractor. The context was liability to federal income taxation. The case does not hold the inherent nature of an attorney's service is such as to preclude the creation of an office for their rendition. True, in the general practice an attorney is ordinarily an independent contractor, but in both public and private affairs he may assume another relationship. Attorneys are commonly employed as house counsel by corporate employers. So in the public domain, although an attorney may be engaged in individual matters as an independent contractor, yet he may assume another status. Government needs professional services of many types, legal, medical, engineering, and if the need is sufficient to induce the creation of a post for their rendition, the incumbent is not an independent contractor merely because the services are professional in nature. Surely the Attorney General and the county prosecutor are not independent contractors. They hold office. State ex rel. Clawson v. Thompson, 20 N.J.L. 689 (Sup.Ct. 1846). [at 541-542].